OURSLER ET AL. *v.* BOARD OF ZONING APPEALS
OF BALTIMORE COUNTY ET AL.

[No. 127, October Term, 1953.]

Decided April 28, 1954.

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Michael Paul Smith* and *W. Lee Harrison* for the appellants.

*Charles W. Held, Jr.,* for the Board of Zoning Appeals of Baltimore County.

*George M. Berry* for Charles E. Gempp and Delonia C. Gempp, his wife.

DELAPLAINE, J., delivered the opinion of the Court.

On July 19, 1951, the Zoning Commissioner of Baltimore County granted a special permit to Charles E. Gempp and Delonia C. Gempp, his wife, to conduct a restaurant on their property situated on the northeast side of the Westminster Road one mile and a half west of Reisterstown in an "A" Residence Zone. The protesting neighbors instituted this proceeding in the Circuit Court for Baltimore County on *certiorari* to the Board of Zoning Appeals to rescind the permit.

The Baltimore County Zoning Enabling Act, adopted by the Maryland Legislature in 1941, empowered the County Commissioners of Baltimore County to adopt a comprehensive plan of zoning regulations affecting not only the construction and repair of buildings, but also the use of land and buildings for trade, industry,

residence and other purposes. The Act empowered the Commissioners to appoint a Zoning Commissioner and a Board of Zoning Appeals consisting of three members. Laws 1941, ch. 247.

In 1943 the Legislature passed an amendment to the Zoning Enabling Act authorizing the County Commissioners to provide that the Zoning Commissioner may make special exceptions to the Zoning Regulations in harmony with their general purposes and intent. The amendatory Act directed the Commissioners to require that a special permit shall be obtained from the Zoning Commissioner in cases where the inherent character of the use requires that it be carried on in a district or area to which it does not conform, or where the use has a peculiar tendency to impair the health, safety and morals of the public. Laws 1943, ch. 877.

The County Commissioners, pursuant to the authority vested in them by the Legislature, adopted the Zoning Regulations for Baltimore County on January 2, 1945. These Regulations divide the County into seven zones: "A" (Cottage) Residence, "B" (Semi-detached) Residence, "C" (Apartment) Residence, "D" (Group) Residence, "E" Commercial, "F" Light Industrial, and "G" Heavy Industrial.

Section III of the Regulations provides that no building or land in any "A" Residence Zone shall be used except for single-family dwellings, two-family dwellings, home occupations, farming and buildings incidental thereto, churches, parochial schools, convents or monasteries, professional offices, public parks or playgrounds, public buildings, public water works or reservoirs, trailers for storage, tourist homes, truck gardens, and accessory uses.

Section XIII deals with special exceptions and special permits. This section, as it stood prior to the amendments which were made on July 2, 1953, listed 23 commercial uses which could be carried on in a residential zone upon special permit granted by the Zoning Commissioner, subject to appeal to the Board of Zoning

Appeals. "Restaurant" was, and still is, one of these uses.

Evidently the County Commissioners decided to include restaurants among the uses which may be carried on by special permit in residential zones because of the popularity of country inns serving good meals in quiet surroundings, and because of the practical impossibility of locating such places in commercial zones where retail stores and other places of business are concentrated.

In accordance with the statutory requirement that the issuance of special permits shall be subject to appropriate principles, standards, rules, conditions and safeguards to be set forth in the Zoning Regulations, the Commissioners prescribed in Section XIII that before any special permit is granted, it must appear that the use for which the permit is requested will not:

"(a) Be detrimental to the safety, health, morals and general welfare of the community involved.

"(b) Tend to create congestion in roads, streets and alleys in the area involved.

"(c) Create a hazard from fire, panic or other dangers.

"(d) Tend to overcrowd land and cause undue concentration of population.

"(e) Interfere improperly with adequate provisions for schools, parks, water, sewerage, transportation and other public requirements, conveniences and improvements.

"(f) Interfere with adequate light and air."

The statutory authorization to the County Commissioners to empower the Zoning Commissioner to issue special permits for restaurants and other commercial uses in residential zones, where they are in harmony with the general purposes and intent of the Zoning Regulations, is a valid delegation of legislative power. *Montgomery County v. Merlands Club,* 202 Md. 279, 96 A. 2d 261. It is the function of the Zoning Commissioner,

and the Board of Zoning Appeals on appeal, to determine whether or not any proposed use for which a special permit is sought would be in harmony with the general purposes and intent of the Zoning Regulations, and whether it could be conducted without being detrimental to the welfare of the neighborhood. Accordingly, in Baltimore County, where restaurants are *prima facie* permissible in residential zones, an applicant for a permit to conduct a restaurant in a residential zone is not required to show that denial of a permit would result in "practical difficulty, or unnecessary or unreasonable hardship," as in the case of a variance, but must show only that the exception would be in harmony with the zoning plan and would not be detrimental to the welfare of the neighborhood. A special permit issued by the Zoning Commissioner will not be rescinded by the Court if the use is permitted by the Zoning Regulations, and the Commissioner did not act unlawfully or arbitrarily.

The property here in controversy, which contains about five acres, was purchased by the Gempps on June 21, 1951. Back of a front yard 50 feet deep is the main building containing eight rooms. It was built before the Revolution and was a popular tavern in the days of the stagecoach. The Gempps acquired the property with the specific purpose of furnishing the house with antiques and opening it as a country inn. As there were restaurants on the Westminster Road within a radius of one mile, it did not occur to them to inquire about zoning regulations. On June 26, 1951, after they discovered that a special permit would be required to open a restaurant, they applied to the Zoning Commissioner for a special permit.

After the Zoning Commissioner granted a permit, George A. Oursler and his wife entered an appeal to the Board of Zoning Appeals. On September 13, 1951, the Board ratified and approved the action of the Commissioner. The Ourslers and other residents of the vicinity thereupon obtained a writ of *certiorari* to review the action of the Board. On November 17, 1953,

the Board's order was affirmed by the Circuit Court for Baltimore County. From the order of the Circuit Court the protestants appealed here.

The Zoning Enabling Act of 1941 provides that any person aggrieved by any decision of the Board of Zoning Appeals may present to the Circuit Court for Baltimore County a petition setting forth that such decision is illegal, in whole or in part, specifying the ground of the illegality. Upon the presentation of such petition, the Court may allow a writ of *certiorari* directed to the Board of Zoning Appeals to review such decision of the Board. The Court has the power to affirm the decision or reverse it in whole or in part, and may remand any case for the entering of a proper order or for further proceedings as the Court shall determine. Laws 1941, ch. 247. Neither that Act nor the amendatory Act of 1943 permits appeals to the Court of Appeals.

In 1953, however, the Legislature passed another Act providing that an appeal may be taken to the Court of Appeals from any decision of the Circuit Court for Baltimore County reviewing a decision of the Board of Zoning Appeals. Laws 1953, ch. 634. Hence, in this case the protestants have the right to appeal from the order of the Circuit Court to the Court of Appeals.

The principal objection to the permit in this case was that the operation of the restaurant would cause a traffic hazard on the new dual highway of the Westminster Road. The protestants produced testimony that the Gempps' land abuts on a curve in the highway and that a motorist cannot see the Gempps' home until he is within 800 or 900 feet. They then relied on the testimony of George M. Lewis, Jr., Director of the Traffic Division of the State Roads Commission, that the Commission generally desires on a high-speed highway a sight-distance of at least 1,000 feet from the entrance of a place of business, whereas the sight-distance from the Gempps' entrance is only 600 feet.

The Board of Zoning Appeals, while giving careful consideration to the traffic official's opinion, nevertheless

believed that, inasmuch as the Gempps' entrance is 30 feet from the new highway, the approach from their entrance to the highway would cause much less traffic hazard than the official would lead the Board to believe. The Board gave the following opinion on this point:

"From actual measurements the Board found that a car coming out of the applicants' parking lot onto the main highway would be able to see a car approaching from the west for a distance of 960 feet, and from the east for a distance of approximately 790 feet. We recognize that good highway design requires a 1,000-foot sight-line, however, we believe that distance was established for high-speed cars being able to see at lease 1,000 feet in front of them.

"In this particular application, the cars leaving the eating place will be at a stand-still before going onto the highway, and they will be able to see cars approaching at approximately the above distance. We believe that with normal care in driving onto the highway, the comparatively few cars which would be expected each day would not cause an undue traffic hazard. The above sight-line distance, east and west, are from actual measurements, and they vary somewhat from the testimony given at the hearing."

We are mindful of the general principle that in reviewing the action of a zoning board, the court does not review the personal opinions of its members, and so the question whether the action of the board was arbitrary must be determined from the facts from which the board drew its conclusion, not from the conclusion itself. *Zang & Sons, Builders, Inc. v. Taylor,* 203 Md. 628, 637, 102 A. 2d 723, 727; *American Oil Co. v. Miller,* 204 Md. 32, 102 A. 2d 727.

But in this case the members of the Board visited the property and made measurements along the highway. Thus they made their findings partly from the testimony

of witnesses and partly from facts learned from personal observation. Their conclusion was that the operation of a restaurant as proposed by the Gempps would not result in a traffic hazard. It is not necessary in this case to determine the extent to which the Board's findings from personal observations and measurements might be taken as outweighing the sworn testimony of witnesses subject to cross-examination, as the protestants challenged only the Board's conclusion, and did not challenge the right of the Board to consider findings from personal observations and measurements, spread upon the record under the circumstances of this case.

We see no reason to disagree with the Board's conclusion that the operation of the restaurant would not cause a traffic hazard. The function of a zoning board is to exercise the discretion of experts, and the court on appeal will not disturb the board's finding where it has complied with the legal requirements of notice and hearing, and the record shows substantial evidence to sustain the finding. *Heath v. Mayor and City Council of Baltimore,* 187 Md. 296, 49 A. 2d 799; *Mayor and City Council of Baltimore v. Biermann,* 187 Md. 514, 50 A. 2d 804.

Another objection to the proposed restaurant was that the Gempps had applied for a permit to sell alcoholic beverages. They admitted that they had applied to the Liquor Board for a full liquor license, since "there was nothing between a beer and wine license and a full license," but they declared that in making their application they gave assurance that they would not sell liquors over a bar, but would sell only to persons at the tables or those who are waiting in the adjoining lounge. On this aspect of the case the Board stated its position as follows:

"The Board does not feel that a high-grade eating place serving liquid refreshments along with the meals would be a detriment to the neighborhood, if it is conducted on a high plane. We realize that once an application is granted

for a special permit setup, it can never be changed without a further application, nevertheless as Baltimore City and Baltimore County grow, there is more and more demand for places similar to that proposed, and if, at some time in the future, ownership should change and especially the liquor setup should not be conducted on a proper plane, the County authorities have the power to correct such a condition."

The Baltimore County Zoning Enabling Act authorizes the County Commissioners to provide that the Zoning Commissioner may make special exceptions to the provisions of the Zoning Regulations subject to "appropriate principles, standards, rules, conditions and safeguards set forth in the Regulations." Laws 1943, ch. 877, Code of Public Local Laws of Baltimore County, 1948 Ed., sec. 367. Moreover, as we have stated, the Circuit Court for Baltimore County has the power to affirm the decision of the Board or reverse it in whole or in part, and may remand any case for the entering of a proper order or for further proceedings.

In this case the Board of Zoning Appeals decided to give its sanction to a special permit on the conditions that the restaurant would be conducted as a high-grade restaurant and that no alcoholic drinks would be served except with meals. Likewise the Court understood that the permit would be granted on these conditions. However, the permit contained no conditions whatever. We will, therefore, remand the case to the Court below for the passage of an order requiring the Zoning Commissioner to qualify the permit by limiting the use to the type of restaurant the applicants propose to conduct.

*Case remanded for the passage of an order in accordance with this opinion, the costs to be paid by appellants.*