HUFF ᴇᴛ ᴀʟ. *v.* BOARD OF ZONING APPEALS
OF BALTIMORE COUNTY

[No. 215, October Term, 1956.]

50

*Decided June 19, 1957.*

The cause was argued before COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ., and KINTNER, J., Associate Judge, Second Judicial Circuit, specially assigned.

*A. Frederick Taylor,* with whom were *Smalkin, Hessian, Martin & Taylor* and *R. Carleton Sharretts* on the brief, for appellants.

*W. Lee Harrison,* with whom was *William P. Bolton, Jr.,* on the brief, for appellees.

HAMMOND, J., delivered the opinion of the Court.

In 1955 a new zoning classification, designated "Manufacturing, Restricted", was provided in Baltimore County for the first time. This appeal challenges its general validity and the propriety of changing to the new classification from Residential some eighteen acres of land on the west side of York Road one mile south of the Belfast Road. The eighteen acre tract is part of a farm owned by the individual appellee, Dundore. The purpose of the reclassification was to enable Diecraft, Inc., which Dundore controls, to build a one-story plant to be used for the manufacture and assembly of small precision instruments, guided missile parts and electrical and communication devices for the Federal Government. The present plant of the company is on Pulaski Highway, where there is no room for necessary expansion. A relocation in a rural area was sought to conform with the Federal requirements for decentralizing plants engaged in making products vital for defense purposes. The Zoning Commissioner approved the reclassification after a hearing, at which the County Planning Commission gave its approval. The Board of Zoning Appeals affirmed the reclassification on condition that it be subject to the provisions and restrictions set out in the development plan approved by the Planning Commission and the Zoning Commissioner. The protestants took the case to the Circuit Court for Baltimore County by *certiorari.* They have a standing as taxpayers to so appeal under the provisions of Code of Public Local Laws of Baltimore County, 1955, Title 30, Sec. 532(g). The applicant intervened and filed an answer and the court affirmed the Board. The appeal is from that action.

The statute now found in the Code of Public Local Laws of Baltimore County, 1955, Title 30, Sec. 532, provided, at the times here material, that the County Commissioners were empowered to enact zoning regulations "* * * in accordance with a comprehensive plan." The Commissioners were au-

thorized to divide or subdivide the County into "districts, divisions or zones" of such number, shape or area as may be best suited to carry out the purpose of the zoning. Regulations must be uniform in each division but could differ from those in other divisions. It was made the duty of the Zoning Commissioner to recommend the boundaries of proposed districts, divisions or zones and the regulations applicable to each. He was directed to make a, preliminary report and hold a public hearing before making a final report. The County Commissioners, after receiving the final report, were to hold public hearings. The County Commissioners had the power, on the recommendation of the Zoning Commissioner, from time to time, to amend, supplement or repeal the existing regulations. They were directed, as part of the regulations adopted by them, to provide for a Board of Zoning Appeals and for appeal from the decision of the Zoning Commissioner to the Board. The statute continues: "The County Commissioners shall have the power to impose on and vest in the Board of Zoning Appeals such duties and powers as may be necessary and advisable for the proper administration and enforcement of zoning regulations and restrictions, including the power to make exceptions in appropriate cases * * *."

The County Commissioners determined in 1954 to rezone the whole of Baltimore County. The Zoning Commissioner conducted public hearings on his preliminary report, and on January 18, 1955, submitted his final report to the Commissioners. After the requisite hearings and due deliberation, the Commissioners, on March 30, 1955, adopted new County-wide zoning regulations in the place and stead of those then in effect. The new regulations were tentative in the sense that they were applicable only until new maps were prepared and adopted for each of the districts of the County, and put all property in the County in one of twelve classifications. Six were residential zones, varying from R-40, in which each lot must be forty thousand square feet, to R. A., in which apartments are permitted. There were three categories for business—local, major and roadside; and three categories for manufacturing, that is, M. R.—Manufacturing, Restricted,

M. L.—Manufacturing, Light, and M. H.—Manufacturing, Heavy. Provisions for special exceptions were also included, specifying in which zones the various uses should be permitted by the Board of Zoning Appeals.

The new category of Manufacturing, Restricted was adopted on the recommendation of the Planning Commission of Baltimore County and the reasons for its adoption are explained in the report of the Commission, which, as the statute provides, was presented to the Zoning Commissioner and the Board for their consideration in reaching a decision in the present case. In the report it was said: "A petition has been filed for the rezoning to M. R. Zone (Manufacturing, Restricted) of the 18-acre tract, with the intention of building a modern-type factory for the manufacturing of quite small metal parts which are needed by the Federal Government in connection with national defense. The Company is now operating in non-expansible quarters on U. S. 40 east, in a building which is architecturally noteworthy as an example of the type of rather small, modern factory that is conscious of its appearance as a public relations factor, and which wants to be in attractive, protected surroundings, rather than in the type of industrial zone where good appearance is not necessarily a significant factor * * *.

"The Office of Planning is now engaged in preparing a Land Use Plan for the entire County. On this Plan will be based a Zoning Plan for the same area. Some sections have already been completed and transmitted to the Zoning Commissioner with recommendation for adoption by the Board of County Commissioners. The plan for the vicinity of the subject tract has not yet been officially approved, but the inherent character and location of this tract are very similar to those sections already approved, which are placed in the R. 40 Zone. There is no question that the subject tract in the ordinary course of events would have been proposed to be placed in the R. 40 Zone, which is the lowest density zone provided for, and which is intended for typical application to such agricultural acreage tracts as this one. The R. 40 Zone thus is not visualized as a purely residential zone,—one which is thought of as contemplating complete

eventual development into approximately one-acre lots, as the Zone permits. Because of the extent and character of Baltimore County this R. 40 Zone necessarily represents to a certain extent a 'reservoir' of future land uses, much of it certainly remaining indefinitely agricultural, some becoming increasingly and more concentratedly residential in character, some being used for non-residential purposes, either as permitted uses or as Special Exceptions: institution grounds, airports, cemeteries, golf courses; and finally, some being logically made into industrial sites, as restricted Manufacturing Zones. The very purpose of creating this type of Zone in the Zoning Regulations that were adopted last March was to provide the flexibility necessary to meet the requirements of the new type of industry previously referred to as wanting a prepossessing environment in keeping with the attractive nature of the factory building and its setting. Many such industries do not need or desire access to railroads. It is therefore ·difficult to anticipate and designate on the Zoning Map in advance all or more than a few of such sites in locations that meet the particular needs of certain industries, hence the provision that makes possible the petitioning for an M. R. Zone.

"* * * the Federal Government has required that industries engaged in national defense contracts for manufacture of products such as those that Diecraft makes, be located not less than ten miles from possible bombing targets such as Baltimore City constitutes. This one distance requirement inevitably requires Diecraft to seek locations only in what are essentially rural, sparsely-settled areas, and in which the need for original designation of industrial zones would have been impossible to foresee. Even now it would be difficult and impracticable in most cases to earmark specific locations in advance for M. R. Zones in sections of the County such as this. That is the reason why provision has specifically been made for petitions to be made for M. R. Zones—each case to be judged on its own merits, and as a sort of quasi Special Exception rather than as an application for a change of zone in the ordinary sense.

"The Office of Planning believes that this petition by the

Diecraft Corporation is a logical and appropriate application of the purpose for which the Office of Planning prepared this type of zone to be created, and for which the Board of County Commissioners adopted this zone as a part of the revised Zoning Regulations. The Office of Planning further believes that the conditions under which the Zoning Commissioner would grant the petition—for this specific proposed use alone, and subject to approved provision of adequate planting, lawns, parking space, etc.,—are sufficient guarantee of consideration for the general welfare of the area.

"In view of all the above factors, the Office of Planning and specifically the Planning Board, by favorable action thereon, recommend approval by the Zoning Commissioner of this petition by the Diecraft Corporation."

The regulations as to Manufacturing, Restricted, provide in Sec. 250.1: "In order to provide greater freedom in the selection of industrial areas and at the same time to secure and maintain effective control over the location, type, and arrangement of industrial uses and to protect the uses in neighboring residential zones, areas for Restricted Manufacturing Zones may be designated on the zoning map and/or may be created by petition in accordance with the procedure outlined in the following sections." If this zoning is sought by petition, it is to be filed with the Zoning Commissioner accompanied by four or more copies of complete development plans showing the existing topography, proposed grading, screening and planting, extent, locations, and character of proposed structures, uses, and open area. A tract must have a minimum area of five acres to be zoned Manufacturing, Restricted. The development plans are to be submitted by the Zoning Commissioner to the Planning Commission for a recommendation on the proposed project and suitability of the location. The Planning Commission shall make its recommendation in writing to the Zoning Commissioner within thirty days. After a public hearing, the Zoning Commissioner passes his order of approval or disapproval or approval with conditions, from which an appeal may be taken to the Board of Zoning Appeals. It is specifically provided that the report of the Planning Commission may be introduced

as evidence by any interested party. Section 250.4 of the regulations goes on to provide: "All plans approved hereunder shall contain a specific requirement that buildings and ground" continue to be so maintained "that they will not adversely affect vicinal properties." Failure to comply with this requirement may be grounds for reclassification after notice and hearing. Further standards are provided in height and area regulations. For example, no more than twenty-five per cent of the land area may be covered by a building and the total floor area of all buildings shall not exceed one-half of the lot. Off-street parking is required but it is not permitted within twenty-five feet of any residential zone. Parking areas must be paved and any lighting thereon must be reflected away from residential zones.

The property in question was put by the 1955 zoning in an R. 6 Zone, where only one and two-family residences are permitted. No zoning map has as yet been promulgated for the district in which the property lies. There is no contention that the procedural requirements of Sec. 250 of the regulations were not followed nor is it argued that the plant in this rural area would be objectionable because of noise or odors or that it is unsightly. It was shown that the nearby Harrisburg Expressway has improved the accessibility of the area, that adequate parking areas are to be provided as the statute requires, that the topography is favorable, that there will be suitable landscaping and lawns, that most property owners in the area favor the proposal, and that there is no evidence that it would depreciate values; on the contrary, there was evidence that it might increase values.

The contention of the appellants is that the reclassification is invalid and unconstitutional as an attempt to authorize "spot zoning" by an administrative agency without relationship to any comprehensive plan and without regard to the general welfare of the County and the neighborhood, and that the statute does not prescribe standards sufficient to sustain the delegation of legislative power to the Zoning Commissioner and the Board of Zoning Appeals.

The appellee Dundore contends that no constitutional question was raised in the case below and none may be con-

sidered here. We agree that the constitutional issue was not raised but the argument as to "spot zoning" and the lack of a comprehensive plan is addressed not only to the justification for the action taken as to the subject property in the light of the facts presented, but to the power of the County Commissioners to create the classification Manufacturing, Restricted as they did. In short, the validity of Sec. 250 and the procedures under it are at issue. It was considered by the court below and discussed in the opinion of the Board of Zoning Appeals, which noted that this was the first appeal to come before it concerning an M. R. Zone, and held that the ordinary rules applicable to reclassification did not apply, since the new authorization was in the nature of a special exception. If the regulations as to Manufacturing, Restricted are invalid or beyond the power of the County Commissioners, the orders below must fall and there is no need to consider any constitutional question. We think the validity of the regulation is properly before us.

When a zoning ordinance or an amendment puts a small area in a zone different from that of the surrounding area, we have what may be called "spot zoning", using the term in a descriptive sense. Such zoning may be invalid or valid. If it is an arbitrary and unreasonable devotion of the small area to a use inconsistent with the uses to which the rest of the district is restricted and made for the sole benefit of the private interests of the owner, it is invalid. *Cassel v. City of Baltimore,* 195 Md. 348, 355. On the other hand, if the zoning of the small parcel is in accord and in harmony with the comprehensive zoning plan and is done for the public good—that is, to serve one or more of the purposes of the enabling statute, and so bears a substantial relationship to the public health, safety, morals and general welfare, it is valid. *Offutt v. Board of Zoning Appeals,* 204 Md. 551, 561; *Temmink v. Board of Zoning Appeals,* 205 Md. 489, 495; *Ellicott v. City of Baltimore,* 180 Md. 176, 183; *Cassel v. City of Baltimore, supra.* The text writers and the Courts of many jurisdictions state the rule as the Maryland cases have stated it.[1]

---

1. 1 *Rathkopf, The Law of Zoning and Planning,* 3rd Ed., Chap. 26,

A comprehensive plan has been said to be a general plan to control and direct the use of land and buildings by dividing the governmental area into use districts according to present and planned future conditions, so as to accomplish, as far as possible, the most appropriate uses of land consist-

---

Sec. 2, p. 380; 2 *Metzenbaum, Law of Zoning,* 2nd Ed., p. 1519; *Rodgers v. Village of Tarrytown* (N. Y.), 96 N. E. 2d 731, 735, ("If, therefore, an ordinance is enacted in accordance with a comprehensive zoning plan, it is not 'spot zoning,' even though it (1) singles out and affects but one small plot * * * or (2) creates in the center of a large zone small areas or districts devoted to a different use. * * * Thus, the relevant inquiry is not whether the particular zoning under attack consists of areas fixed within larger areas of different use, but whether it was accomplished for the benefit of individual owners rather than pursuant to a comprehensive plan for the general welfare of the community.") *Feraut v. City of Sacramento* (Cal.), 269 P. 537, 541; *Marshall v. Salt Lake City* (Utah), 141 P. 2d 704, 709, 711; *Thomson v. Tafel* (Ky.), 218 S. W. 2d 977, 980, 981; *Bartram v. Zoning Commission of City of Bridgeport* (Conn.), 68 A. 2d 308, 310-311 ("The commission might be guilty of spot zoning either in the original regulations it made or in later amendments, but, if in one or the other it decides, on facts affording a sufficient basis and in the exercise of a proper discretion, that it would serve the best interests of the community as a whole to permit a use of a single lot or small area in a different way than was allowed in surrounding territory, it would not be guilty of spot zoning in any sense obnoxious to the law.") *Bishop v. Board of Zoning Appeals* (Conn.), 53 A. 2d 659; *Kutcher v. Town Planning Commission* (Conn.), 88 A. 2d 538; *Levinsky v. Zoning Commission of City of Bridgeport* (Conn.), 127 A. 2d 822; *Co-Ray Realty Co. v. Bd. of Zoning Adjustment* (Mass.), 101 N. E. 2d 888; *Holt v. City of Salem* (Ore.), 234 P. 2d 564; *Shell Oil Company v. Edwards* (Ala.), 81 So. 2d 535, certiorari denied, 350 U. S. 885, 100 L. Ed. 780; *Gratton v. Conte* (Pa.), 73 A. 2d 381; *Graham v. Graybar Electric Co.* (Neb.), 63 N. W. 2d 774; *Higbee v. Chicago, B. & Q. R. Co.* (Wis.), 292 N. W. 320; *McNutt Oil & Refining Co. v. Brooks* (Tex. Civ. App.), 244 S. W. 2d 872, 877 ("The zone may be small and of greater benefit to those seeking it than to others; yet if there is a public need for it it does not constitute unjustified 'spot zoning'. *Edgewood Civic Club v. Blaisdell,* 95 N. H. 244, 61 A. 2d 517; 62 *C. J. S., Municipal Corporations,* p. 468, Sec. 226(12) * * * Such zoning forming a part of the comprehensive plan is not considered as unjustified spot zoning."). Many cases on the subject are collected in the annotation in 51 A. L. R. 2d 263.

ent with the public interest and the safeguarding of the interests of the individual property owners. 1 *Rathkopf, The Law of Zoning and Planning,* 3rd Ed., p. 107. The Connecticut Court in *Bishop v. Board of Zoning Appeals,* 53 A. 2d 659, said that a comprehensive plan is a general plan to control and direct the use and development of property by dividing it into districts according to present and potential use of the properties. See also *Constitutionality of Zoning,* 37 Harvard L. R. 834, and *Zoning According to Plan,* 68 Harvard L. R. 1154, 1166-1175. We think the Baltimore County zoning regulations of 1955, including the provisions as to Manufacturing, Restricted zones, constitute a comprehensive plan. The legislative body determined that it was desirable and in the public interest that there be scattered about the undeveloped areas of the County tracts of five acres or more on which very light and unoffensive manufacturing operations would be permitted. The legislative mind clearly concluded that the Manufacturing, Restricted zones, if of special size and proper location and topography, with unobtrusive buildings limited to occupancy of a small percentage of the lot, and with other height and area limitations, as well as with lawns and planting and adequate parking facilities, were entirely compatible with, and properly included as islands or enclaves in, surrounding residential zones. The legislators added further safeguards by providing in Sec. 250.1 of the regulations that the purpose of the classification M. R. and the mechanics for securing it were *inter alia* "to protect the uses in neighboring residential zones", and in Sec. 250.4 that the building and grounds must be continuously maintained so that they will not adversely affect vicinal properties. If this is not done, the classification may be revoked after notice and hearing. All of these provisions are part of the general plan.

The legislative determination that there existed facts and conditions calling for the passage of the regulations as to Manufacturing, Restricted in the manner in which they were passed, raises a strong presumption that the action was correct and the burden on one who attacks the legislation is to show—almost to demonstrate—that it was wrong. *Wake-*

*field v. Kraft,* 202 Md. 136; *Grant v. City of Baltimore,* 212 Md. 301, 316.

The appellants argue that a comprehensive zoning ordinance is not one that contemplates areas unknown with particularity at the time of the passage of the ordinance, which are thereafter to be zoned differently from the larger area surrounding them, and that, even if this could be done as part of a comprehensive plan, the determination as to what small areas shall be so zoned in the future, cannot be left to an administrative body. We do not agree. A zoning plan does not cease to be a comprehensive plan because it looks to reasonably foreseeable potential uses of land which cannot be precisely determined when the zoning is passed. In zoning of undeveloped areas, account can be taken of potential uses reasonably foreseeable, that is, as the Planning Commission put it, the undeveloped areas can be looked upon as a reservoir of future land uses. That this is proper was recognized by the Supreme Court of Errors of Connecticut in *Kutcher v. Town Planning Commission,* 88 A. 2d 538. There, one Patten desired to conduct experimental work for the aircraft industry on a two and a half acre tract in the town of Manchester, zoned as rural residential. He applied to the planning commission for a change of zoning of the land to industrial and the commission granted his application. The Court noted that an examination of the ordinance and zoning map revealed that every part of the town was placed in a zone of one kind or another, and said: "The undeveloped and sparsely settled portions were placed in what was described as a rural residence zone. It is the defendants' claim that this zone was intended to be a reservoir for future development and embraced areas which might require, from time to time, further consideration by the zoning authority as the town grew." The Court found this claim to be reasonable, and, noting that in the original zoning many separate and relatively small areas in outlying districts surrounded wholly by land zoned rural residential had been constituted industrial zones in which were permitted quiet and unobnoxious uses, found that the administrative body could reasonably assume "* * * that the zoning authorities, forced to accept conditions

as they found them at the time the ordinance was adopted, planned new zoning in the future which would permit limited industrial uses in segregated areas where the nature of the land and the trend already established demonstrated that such uses represented, in a rapidly growing, industrial community, the best possible employment of the particular area. * * * Obviously, zoning could not remain static. Growth demanded zone changes. The test is whether, in the light of these basic facts * * * the granting of Patten's application was arbitrary and illegal and exceeded the power of the commission." The Court held that the intent of the zoning authorities as to future changes, reasonably found by the commission, was part of a comprehensive plan, that the zoning authorities had wide and liberal discretion and that the Court would not substitute its judgment for that of the commission when the subject was fairly debatable. See also *Bartram v. Zoning Commission of City of Bridgeport* (Conn.), 68 A. 2d 308, 310, as to a policy of a zoning commission to decentralize business and changes of zones to further that policy.

We find there was no improper delegation of power to the Planning Commission, the Zoning Commissioner and the Board of Zoning Appeals. In *Montgomery County v. Merlands Club,* 202 Md. 279, we said, speaking of the statute there applicable as to special exceptions, that it validly delegated to the Zoning Board "a limited authority to permit enumerated uses which the legislative body finds in effect *prima facie* properly residential, absent any fact or circumstance in a particular case which would change this presumptive finding. The duties given the Board are to judge whether the neighboring properties and the general neighborhood would be adversely affected, and whether the use, in the particular case, is in harmony with the general purpose and intent of the zoning plan. We think that these standards, as applied to the specific uses enumerated in this Section, are sufficient on which to base a factual claim." We said further: "An exception such as that permitted by Section 13 g need only be in the scope of the authorization spelled out in the ordinance and constitute a proper exercise of the

board's sound discretion." We think the reasoning of that case is entirely applicable here. What was said in the *Merlands* case was repeated in *Oursler v. Bd. of Zoning Appeals,* 204 Md. 397, where we approved a special permit for a restaurant in a residential district, and the principle was applied in *Erdman v. Bd. of Zon. Appeals,* 212 Md. 288, where the granting of a permit for a filling station in a commercial district was affirmed. The standards established as to Manufacturing, Restricted zones are as definite and specific and as extensive as those governing special exceptions in the cases we have just cited, if not more so, as we have indicated. We read the provisions of the regulations as to the purpose and intent in establishing M. R. Zones and as to the mechanics employed to be sure that the plan approved will continue to "protect the uses in neighboring residential zones" and not adversely affect "vicinal properties", to mean that an area cannot be properly zoned or rezoned Manufacturing, Restricted unless in actual operation and effect it will be a harmonious part of the comprehensive plan and serve the purposes of the enabling act; that is, that the zoning will be not only in the public good but in the interests of nearby property owners. If the regulations be read as we read them, it is clear that the Manufacturing, Restricted classification is analogous to a special exception, and the rules which are applicable to special exceptions would apply, not the general rules of original error or change in conditions or the character of the neighborhood, that control the propriety of rezoning. This is because, as in the case of a special exception, there has been a prior legislative determination, as part of a comprehensive plan, that the use which the administrative body permits, upon application to the particular case of the specified standards, is *prima facie* proper in the environment in which it is permitted. This prior determination and the establishment of sufficient standards effectively refute the claim of improper delegation of legislative power. *Montgomery County v. Merlands Club, supra; Bishop v. Board of Zoning Appeals* (Conn.), 53 A. 2d 659, 662, *supra; Thomson v. Tafel* (Ky.), 218 S. W. 2d 977, 980, 981; *Kutcher v. Town Planning Commission* (Conn.), 88 A. 2d 538, *supra.*

We are supported in the views we have reached as to the power of the County Commissioners to enact legislation providing for Manufacturing, Restricted zones by a decision of the Court of Appeals of New York in *Rodgers v. Village of Tarrytown,* 96 N. E. 2d 731. There an amendment to the zoning ordinance of the town created a new district or class of zone, in which were permitted garden apartments previously banned. The boundaries of the new type district were not delineated in the ordinance but were to be " 'fixed by amendment of the official village building zone map, at such times in the future as such district or class of zone is applied, to properties in this village.' " The village planning board was empowered to approve such amendments. Exacting standards of size and physical layouts for Residence B-B zones, a minimum of ten acres of land and a maximum building height of three stories were mandated; set-back and spacing requirements for structures were carefully prescribed; and no more than 15% of the ground area of the plot was to be occupied by buildings. The Court upheld the action of the legislative body in amending the statute in that manner, saying that the choice of methods to accomplish results it found desirable lay with it. The Court said: "Two such methods were at hand. It could amend the General Zoning Ordinance so as to permit garden apartments on any plot of ten acres or more in Residence A and B zones (the zones more restricted) or it could amend that Ordinance so as to invite owners of ten or more acres, who wished to build garden apartments on their properties, to apply for a Residence B-B classification. The board chose to adopt the latter procedure. * * * Nor did the board, by following the course which it did, divest itself or the planning board of power to regulate future zoning with regard to garden apartments. The mere circumstance that an owner possesses a ten-acre plot and submits plans conforming to the physical requirements prescribed by the 1947 amendment will not entitle him, *ipso facto,* to a Residence B-B classification. It will still be for the board to decide, in the exercise of a reasonable discretion, that the *grant* of such a classification accords with the comprehensive zoning plan and benefits the

village as a whole. * * * The action of the board must in all cases be reasonable and, whether a particular application be granted or denied, recourse may be had to the courts to correct an arbitrary or capricious determination." All that the New York Court said is pertinent here, particularly the discretion of the administrative body and the check of the courts on arbitrary action either way.

It is suggested that the recent decision of the Supreme Court of New Jersey, in *Rockhill v. Chesterfield Township,* 128 A. 2d 473, requires a conclusion different from that we have reached. There the whole of the municipal area was divided into either agricultural or residential zones. The Court noted that the ordinance provided for "* * * all manner of 'special uses,' 'neighborhood' and other businesses, even 'light industrial' uses and 'other similar facilities,' placed according to local discretion without regard to districts, ruled by vague and illusive criteria, is indeed the antithesis of zoning", and flouted the concept of zoning according to a comprehensive plan. We see a distinctive difference between the zoning plan of Baltimore County and that held invalid by the New Jersey Court. Here, the whole County is minutely zoned and exceptions, including the kind of exception designated Manufacturing, Restricted are limited as to zones and the criteria for the selection of the exceptions is not "vague and illusive" but definite and specific. We do not find the case persuasive.

The appellants do not concede that if the procedures for the establishment of Manufacturing, Restricted zones are valid that it was proper to grant the application in the present case but they do not seriously argue to the contrary. We think the evidence before the zoning authorities made their action entirely free from a valid claim that it was arbitrary, capricious or unreasonable. The order of the Circuit Court for Baltimore County will, therefore, be affirmed.

*Order affirmed, with costs.*

HENDERSON, J., filed the following dissenting opinion:

I am unable to agree with the holding of the Court in this case, and since the question raised goes to the heart of the

zoning process, I shall try to state briefly the reasons for my dissent.

The new classification M. R. was included in revised zoning regulations adopted by the County Commissioners of Baltimore County on March 30, 1955, prior to the adoption of the new Charter, pursuant to a public local law, Title 23, Section 366 of the Baltimore County Code (Title 30, Section 532 in the 1955 Code). This section, like the corresponding sections of the general law, Code (1951), Article 66B, Sections 2 and 3, authorizes zoning in accordance with a comprehensive plan, and authorizes the County Commissioners to divide the county into as many districts or zones as they deem necessary and to impose restrictions upon uses that must be uniform within the various districts or zones. They are also authorized to revise the zones and restrictions from time to time. Implicit in these provisions is the concept of controlling the future development of particular areas, large or small, by planning in advance. In *Ellicott v. City of Baltimore*, 180 Md. 176, 181, Chief Judge Bond, speaking for the Court, said: "The purpose of the zoning law is, of course, to devote general areas or districts to selected uses. 'The whole value of zoning lies in the establishment of more or less permanent districts, well planned and arranged.' *Rehfeld v. San Francisco*, 218 Cal. 83, 85, 21 P. 2d 419, 420." It is true that in *Anne Arundel County v. Ward*, 186 Md. 330, 339, we pointed out that there is no requirement that an entire municipality or county be zoned at one time, or that regulations be uniform throughout the county. Nevertheless, after restrictions have been imposed, they are not to be lightly disregarded. Professor Haar's article, "In Accordance With a Comprehensive Plan", 68 Harv. L. Rev. 1154, states: "The phrase here under examination—'in accordance with a comprehensive plan'—apparently originated in Section 3 of the Standard State Zoning Enabling Act. An explanatory note to that section states: 'This will prevent haphazard or piecemeal zoning. No zoning should be done without such a comprehensive study'."

In a long line of cases we have stated the presumption that attaches to original zoning. In *Temmink v. Board of Zoning Appeals*, 205 Md. 489, 494, we said: "It is an established

rule that where an application is made for reclassification of a tract of land from one zone to another, there is a presumption that the zones established by the original zoning ordinance were well planned and arranged and were intended to be more or less permanent, subject to change only when there are genuine changes in conditions. Thus, before a zoning board rezones a property, there should be proof either that there was some mistake in the original zoning or that the character of the neighborhood had changed to such an extent that reclassification ought properly to be made." In *Mettee v. County Com'rs,* 212 Md. 357, 366, we noted that even where the legislative body acts, rather than an administrative agency, the presumption obtains, and something more than a change of mind must be shown. In *American Oil Co. v. Miller,* 204 Md. 32, 44, it was said that "Zoning cannot be done by piecemeal legislation. It can be upheld only as part of a general plan for a community which sets apart certain areas for agricultural, residential, and business purposes, where such uses are obviously suitable and needed." In *Zinn v. Board of Zoning Appeals,* 207 Md. 355, 359, we said: "Zoning, of course, looks to the future and is predicated upon an assumed ability to predict future needs within a narrow range of fallibility. When it is argued that an unanticipated need has developed, this presupposes a fault in the original plan, that should be ideally corrected by a resurvey of the land use map, rather than by piecemeal alteration." We also said (p. 363): "The fundamental objection lies in the fact that there is apparently not now in existence, any more than there was in 1945, a truly comprehensive land use plan. In the absence of such a plan, the Board is put in the position of making piecemeal adjudications on testimony produced by successive applicants and protestants, in which one proposed exception follows another, without any opportunity to consider objectively the long-range purposes. The dangers in this type of procedure have been noted." Cf. *Eckes v. Board of Zoning Appeals,* 209 Md. 432, 441.

The startling feature of the regulations in the instant case is the disclaimer by the Planning Commission of its ability to prescribe or delineate in advance areas suitable for light industrial development. In its report the Commission con-

cedes that it has no present plan to alter the residential classi-
fication of this district, which will remain in the zone of
lowest density. But it states that "many such industries do
not need or desire access to railroads. It is, therefore, diffi-
cult to anticipate and designate on the zoning map in advance
all or more than a few of such sites in locations that meet the
particular needs of certain industries, hence the provision
that makes possible the petition for an 'M. R.' zone." The
report also sought to justify the proceeding for reclassification
by petition, on the ground that the Federal Government was
forcing certain industries to disperse into "essentially rural
and sparsely-settled areas which cannot in most cases be
earmarked in advance." If the Planning Commission can-
not plan industrial development in advance, then certainly
the Zoning Commissioner, who is not required to possess ex-
pert qualifications in the planning field, and who is confronted
with testimony in a series of contested cases, cannot do so.
It seems that the future development of large segments of the
County is to be left to the whim of individual factory owners.
Indeed, in the instant case, it is difficult to see any reason for
Diecraft, Inc., to select this particular location, in the open
country, except for the extraneous fact that its owner also
owns a country estate there.

I agree that there was no showing in the instant case that
the proposed structure and use would seriously annoy the
neighbors. It seems clear, however, that it will materially
alter the character of the neighborhood, and render it less
desirable for those who have built or purchased large homes
and country estates in the area. Many of the arguments here
advanced, pro and con, were considered in the case of *Walker
v. Talbot County,* 208 Md. 72. Surely there are at least
some areas in Baltimore County that could properly be set
aside for this type of use, and from which industry could be
properly excluded. A factory will naturally attract workers,
and create a demand for small homes in the neighborhood,
with a consequent demand for more public services, schools
and facilities. It will obviously upset the stability that zoning
is intended to promote. No doubt it will increase the value
of the land for subdivision purposes.

It would seem that the Federal policy on dispersal plays

only a minor part in the new scheme. Many industries are on the move, stimulated by the ease of motor transport and by a desire to avoid the congestion and other disadvantages of an urban location. The uses permitted in an M. R. zone include many that are not in any way connected with defense, and cover virtually the whole range of light industry. The practical effect is that property owners in a residential zone of the lowest density can no longer rely on the zoning classification. At any time, light industrial plants can move into an exclusively residential area, so long as an administrative official determines that the factory will not annoy the immediate neighbors, without reference to any general plan. True, he must consult the Planning Commission but its opinion is wholly advisory. This represents an abrogation of the zoning power to plan in advance, and a return to the older concept of nuisance. Territorial distribution of uses, in accordance with a comprehensive plan, seems to have gone by the board. I think such a scheme is *ultra vires* and beyond the scope of the enabling act. If such a departure from accepted tenets is required by modern conditions, as contended, it should be brought about by change in the basic law. At the very least, the choice open to the administrative official should be subject to some territorial limits and the application of prescribed standards consistent with a general plan.

The Supreme Court of New Jersey, in a unanimous decision, has struck down an ordinance based on the same theory as the regulations in the instant case. *Rockhill v. Chesterfield Township*, 128 A. 2d 473, 478 (N. J.). The court said: "'The scheme of the ordinance is the negation of zoning. It overrides the basic concept of use zoning by districts, that is to say, territorial division according to the character of the lands and structures and their peculiar use suitability and a comprehensive regulatory plan to advance the general good within the prescribed range of the police power. The local design is 'normal agricultural' and residence uses and the specified 'special uses' by the authority of the planning board and the local governing body, generally where 'investigation has shown that such structures and uses will be beneficial to the general development,' and 'light industrial uses and other

similar facilities having no adverse effect on surrounding property and deemed desirable to the general economic well-being of the Township,' terms hardly adequate to channel local administrative discretion but, in all events, making for the 'piecemeal' and 'spot' zoning alien to the constitutional and statutory principle of land use zoning by districts and comprehensive planning for the fulfillment of the declared policy. The fault is elementary and vital; the rule of the ordinance is *ultra vires* and void. * * *

"Reserving the use of the whole of the municipal area for 'normal agricultural' and residence uses, and then providing for all manner of 'special uses,' 'neighborhood' and other businesses, even 'light industrial' uses and 'other similar facilities,' placed according to local discretion without regard to districts, ruled by vague and illusive criteria, is indeed the antithesis of zoning. * * * The course taken here would flout this essential concept of district zoning according to a comprehensive plan designed to fulfill the declared statutory policy."

The opinion of the court in the instant case argues that the scheme of the M. R. zone classification is in the nature of a special exception. One answer to that argument is that Section 250 of the Regulations is not set up as a special exception, nor does it call for the application of the standards for special exceptions set up in Section 270 and 502 of the Regulations. But even if it did, the new scheme goes far beyond anything that we have yet approved, by way of special exception. In *Montgomery County v. Merlands Club*, 202 Md. 279, we held that the Board of Zoning Appeals was properly empowered to grant a special exception in the case of a private club, upon finding that it would not adversely affect the development of neighboring properties and would be in harmony with the general purpose and intent of the zoning plan. In effect, the legislative body had determined in advance that the establishment of a private club was permissible in a residential zone, beneficial to such use, and not inconsistent therewith. This is a far cry from the reclassification in the instant case. We might take judicial notice of the fact that country clubs, of the type proposed in the case

cited, are not only entirely consistent with, and beneficial to, residential communities of a certain type, but whole communities in Baltimore City and elsewhere have been built up around them. But always heretofore it has been assumed that industrial and residential uses are inconsistent and incompatible, and not beneficial to one another. It is difficult to see how the legislative body in the instant case could make a factual determination to the contrary, and I do not find that it has done so. The scheme is frankly described as one to "provide greater freedom in the selection of industrial areas". The selection is by the interested persons who profit from the change, subject only to approval by an administrative official who considers only whether the proposed development plans are designed to shield the impact on adjacent properties.

Again, in another line of cases, dealing chiefly with shopping centers, we have recognized that there is "no inherent objection to the creation of small districts within a residential zone, not inconsistent with a comprehensive plan, where establishments for the service and convenience of residents may be permitted." *Zinn v. Board of Zoning Appeals, supra,* and cases cited. It can hardly be maintained in the instant case that a factory will serve the convenience of the residents. In *Oursler v. Board of Zoning Appeals,* 204 Md. 397, and *Erdman v. Board of Zoning Appeals,* 212 Md. 288, we approved special permits for a restaurant in a residential district, and a filling station in a commercial district. These facilities had been found by the legislative body to be consistent with, and beneficial to, the respective zonal uses. It was noted that no reclassification was involved, and no departure from the general plan. Likewise, in *Rodgers v. Village of Tarrytown,* 96 N. E. 2d 731 (N. Y.), strongly relied on in the opinion of the court in the instant case, the change was from one residential classification to another, so as to permit garden type apartments. The legislative action there was similar to the action approved in some of the Maryland cases cited, and I cannot see that the case supports the holding in the instant case.

For the reasons stated, I think the order of the trial court should be reversed.