KROEN ET AL. *v.* BOARD OF ZONING APPEALS OF BALTIMORE COUNTY ET AL.

[No. 122, October Term, 1955.]

*Decided March 16, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*A. Gordon Boone* for appellants.

*John W. Hessian, Jr.* and *Arnold Fleischmann,* with whom were *H. Richard Smalkin* and *Smalkin, Hessian, Martin & Taylor* on the brief, for appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Baltimore County reversing an order of the Board of Zoning Appeals of Baltimore County which denied a petition for reclassification of a tract of 50 acres of land on Holabird Avenue, west of Vesper Avenue, in the Dundalk section of Baltimore County from an "A" Residence Zone to a "D" Residence Zone.

The Baltimore County Zoning Enabling Act, which was enacted by the Legislature of Maryland in 1941, authorized the County Commissioners of Baltimore County to adopt a comprehensive plan of zoning regulations and restrictions affecting the erection, alteration and use of buildings and land in Baltimore County for trade, residence, industry and other purposes. Laws 1941, ch. 247. In 1943 the Legislature amended the Act by authorizing the County Commissioners to make special exceptions to the provisions of the Zoning Regulations and providing for special permits for certain uses under the Zoning Regulations. Laws 1943, ch. 877.

The County Commissioners, in pursuance of the authority delegated to them by the Legislature, adopted Zoning Regulations on January 2, 1945, which divided the county into seven zones, namely: "A" (Cottage) Residence, "B" (Semi-detached) Residence, "C" (Apartment) Residence, "D" (Group) Residence, "E" Commercial, "F" Light Industrial, and "G" Heavy Industrial. *Oursler v. Board of Zoning Appeals of Baltimore County,* 204 Md. 397, 400, 104 A. 2d 568; *Temmink v. Board of Zoning Appeals of Baltimore County,* 205 Md. 489, 109 A. 2d 85.

In 1945 the Legislature authorized the County Commissioners to vest in the Zoning Commissioner the power to amend, supplement, or change from time to time the boundaries of the zoning districts, divisions or zones. Laws 1945, ch. 502, Baltimore County Code, 1948 Ed., sec. 366. The County Commissioners, in accordance with that authority, vested in the Zoning Commissioner the power to reclassify tracts of land.

On September 17, 1953, John A. Vesper and other owners of the tract in question, and the Oakmont Company, the conditional contract purchaser, filed with the Zoning Commissioner their petition for reclassification from an "A" Residence Zone to a "D" Residence Zone in order to be able to construct row houses.

In the Dundalk section are many large industries. The largest are the plants of the Bethlehem Steel Company and the Glenn L. Martin Company. It was testified that there were 29,000 employees at the Bethlehem Steel plant alone. However, the immediate area in which the tract is located is residential in character, and most of the dwellings are of the cottage type, rather than of the group type. On October 26, 1953, the Zoning Commissioner denied the petition. The petitioners then appealed to the Board of Zoning Appeals.

Morton Macht, of Baltimore, an official of the Welsh Construction Company, which has been planning to build the row houses in the event that the tract is reclassified, testified that his company selected this location for development because it is possible to build a row house which "comes within the range of the average industrial worker's income, his monthly payments and his ability to maintain the property afterwards."

Vehement protests were made by nearby property owners to the petition for rezoning. A number of the residents appeared before the Board and testified that the proposed row houses would depreciate the value of their properties. One of the protestants was C. R. Marcheski, who resides on Vesper Avenue. His testimony was typical of the protests. He testified before the Board as follows:

"I think the applicant for rezoning is making too much issue in referring to our area as industrial. There is a good bit of industry in the surrounding area, that is true. I think we should narrow it down to our immediate area. * * * The applicant keeps referring to it as industrial. It is not. * * * As a citizen of Mary-

land I abide by the zoning law. That has been a residential cottage area for many, many years. There is one little immediate area left. It is the only tiny area left for development. * * * The character of our neighborhood has maintained this particular character for 30 years. * * * Maybe ten or twelve blocks on up the road they have constructed very extensively. * * * There was no one to protest. They have constructed these homes. There have been a hundred built, maybe another hundred in process of construction. Therefore, I fail to see why they want to build up the Vesper tract. We are interested in our community from a civic point of view to protect what we have. The applicant is interested in his business. He is not concerned with the neighborhood. He may say to you we have all those nice facilities and people in those particular homes will be happy. I think that is largely a misrepresentation. Their object is to get the buildings. Our interest is civic, and we are not interested in any building aspect. If there is any need for expansion let it conform with the existing zoning. There is one little area left. They will destroy the character of our whole neighborhood. For that reason I vehemently object to it."

The first hearing before the Board was held on March 4, 1954, and on April 22 the Board passed an order denying the petition. The Board stated that it was indisputable that the water supply was inadequate; that the concentration of population that would result from group housing would add an additional burden upon the inadequate water supply; and that the reclassification would be detrimental to the welfare of the community.

The petitioners thereupon filed in the Circuit Court a petition for *certiorari* alleging that the order of the Board was illegal and void. Chief Judge Gontrum, after

hearing the case on November 4, 1954, remanded it to the Board for additional testimony.

The Board took additional testimony, which was filed in Court on February 15, 1955.

On March 7, 1955, Judge Gontrum held a second hearing, and again remanded the case to the Board for review.

On May 6, 1955, the Board passed another order reaffirming its order of April 22, 1954, denying the reclassification. The Board filed a supplemental opinion stating that they could find no reason to change their original view that the owners of the individual cottages in this area are entitled to the protection of the zoning plan as originally adopted. After stating that the evidence failed to establish either that the original zoning was erroneous or that there had been any such change in the character of the neighborhood as to justify a change in the zoning map, the Board stated:

> "This section was and is a cottage area. There is no reason to permit the invasion of this area with group houses except the desire of the builders to realize larger profits by putting more dwelling units on the land.
>
> "One of the fundamental purposes of zoning is to prevent the overcrowding of land and to avoid undue concentration of population. It is the policy of the County authorities to discourage group housing because of the problems of water supply, sewerage, police and fire protection, schools and other public services which such heavy concentration of population brings."

On August 9, 1955, Judge Gontrum reversed the order of the Board. In his opinion filed on August 24, 1955, he stated that he had visited and examined the property, and that he could not see how the erection of row houses could damage the neighborhood. He stated that there are a large number of row houses in this area, and he could not see any reason to compel the owners to erect cottage-type dwellings, rather than group-type dwellings.

It is a basic rule in the law of zoning that where a board of city or county officials, under authority conferred by the Legislature, has enacted a zoning ordinance, judicial review of action taken by the board is restricted and narrow in scope. An attack upon a zoning ordinance, to be successful, must show affirmatively and clearly that it is arbitrary, capricious, discriminatory, or illegal. The presumption of reasonableness and constitutional validity applies to rezoning as well as to original zoning. The courts presume that the original zoning is well planned and designed to be permanent. Accordingly it is a firmly established rule that before a zoning board reclassifies property from one zone to another, there should be proof either (1) that there was a mistake in the original zoning, or (2) that the character of the neighborhood has changed to such an extent as to justify reclassification. *Wakefield v. Kraft,* 202 Md. 136, 96 A. 2d 27; *American Oil Co. v. Miller,* 204 Md. 32, 102 A. 2d 727; *Temmink v. Board of Zoning Appeals of Baltimore County,* 205 Md. 489, 109 A. 2d 85.

In the instant case there was no evidence to show that the original zoning was erroneous. Likewise, the evidence failed to establish that since the adoption of the zoning map there had been any such change in the character of the neighborhood as to justify a reclassification. The record shows that in the immediate area the dwellings are of the cottage type, except a comparatively few which were erected before the adoption of the zoning map. Thus the houses which have been erected in the past ten years have been of the cottage type, i. e., each constructed on a separate lot.

It appears from the record that Judge Gontrum expressed his dissatisfaction with the work of the zoning officers. Moreover, after making a personal inspection of the property and the neighborhood, he felt that row houses in this section are needed. He remarked that he felt that the opinion of the real estate operator, who is willing to invest his money in the proposed construction, is entitled to greater weight than the opinions of zoning

officials who have no experience in the construction business. He also was unable to see how the erection of the proposed row houses would depreciate the value of nearby homes.

On an appeal from an order of a zoning board, it is not the function or the right of the reviewing court to zone or rezone, but only to decide whether the board's action was arbitrary, capricious, discriminatory or illegal. Whatever may be the personal opinion of the court on zoning, the law is settled that in an appeal from a decision of a zoning board, the court cannot substitute its own judgment as to the wisdom or the soundness of the board's action. *Offutt v. Board of Zoning Appeals of Baltimore County*, 204 Md. 551, 562, 105 A. 2d 219. We find it necessary, therefore, to reverse the order appealed from.

The Baltimore County Zoning Enabling Act of 1941 and the amendatory Act of 1943 made no provision for appeals from decisions of the Circuit Court to the Maryland Court of Appeals. In 1953 the Legislature passed another Act which provides that an appeal may be taken to the Court of Appeals from any decision of the Circuit Court for Baltimore County reviewing a decision of the Board of Zoning Appeals. This Act directs that in such cases the Court of Appeals shall not award costs of the appeal against any party to the appeal except the appellant. Laws 1953, ch. 634. Accordingly we must order appellants in this case to pay the costs of this appeal.

*Order reversed, the costs to be paid by appellants.*