MISSOURI REALTY, INC. *v.* RAMER ET AL.

[No. 214, September Term, 1957.]

444

*Decided April 28, 1958.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and GRAY, J., Chief Judge of the Seventh Judicial Circuit, specially assigned.

*Francis D. Murnaghan, Jr.,* for the appellant.

*John W. Hessian, Jr.,* and *Arnold Fleischmann,* with whom were *Smalkin, Hessian, Martin & Taylor* on the brief, for William Lee Ramer *et al.,* appellees.

No brief and no appearance for the Board of Zoning Appeals of Baltimore County.

PRESCOTT, J., delivered the opinion of the Court.

On July 20, 1956, the appellant sought a reclassification in the zoning for residential purposes of certain real estate, consisting of about 26 acres of land located in Baltimore County, from R. 6 Zone (cottage or semi-detached) to R. G. Zone (group housing). After a hearing upon appellant's petition, the Zoning Commissioner of said county determined that the reclassification should be granted upon the grounds that the change in the character of the neighborhood since the original zoning warranted the same, and it would not be detrimental to the health, safety or general welfare of the community involved. Certain protestants, the appellees herein,

appealed the decision of the Commissioner to the Board of Zoning Appeals (Board) (now the County Board of Appeals) of said county. Following another hearing, the Board also granted the requested reclassification, and the appellees petitioned the Circuit Court for a writ of *certiorari.* That court then reversed the action of the Board upon the grounds (1) that there was not sufficient evidence of a change in the character of the neighborhood, and (2) the reclassification would result in traffic congestion and hazard, and unduly burden the overcrowded condition of the schools.

Before discussing these findings of the trial court separately, it may be well to state the law that governs our consideration of both. The appellees suggest the statute that permits review of the action of the Board by the Circuit Court for Baltimore County on the petition of aggrieved persons is broader than many such statutes, and permits a wider scope of review by the trial court than the decisions of this Court have stated is allowed. This Court, on several occasions, has so recently ruled on this question that it requires no extended discussion. For some of the cases, see *Offutt v. Board of Zoning Appeals,* 204 Md. 551, 562, 105 A. 2d 219; *Kroen v. Board of Zoning Appeals,* 209 Md. 420, 427, 121 A. 2d 181; *Hardesty v. Zoning Board,* 211 Md. 172, 177, 126 A. 2d 621. The scope of such review is succinctly stated in the *Offutt* case, *supra,* at page 562, as follows:

> "We cannot disregard the general rule that in an appeal from a decision of a zoning board, the court will not substitute its own judgment as to the wisdom or soundness of action taken by the board, but will decide only whether or not such action was arbitrary or discriminatory and illegal. It is not the function of the court either to zone or to rezone, but only to decide whether the board properly applied the applicable law to the facts. The court should not substitute its own judgment for the judgment of the board if the question decided is fairly debatable. If there is room for reasonable debate as to whether the facts justified the board in deciding the need for

its action, the decision must be upheld. It is only where there is no room for reasonable debate, or where the record is devoid of supporting facts, that the court is justified in declaring the legislative action of the board arbitrary or discriminatory."

It is a principle of universal recognition that zoning, once imposed, is not static. If it could not be altered with the changing conditions that surround us in the world today, progress would be retarded, and many of the advantages, logically expected from zoning, would be lost. Restrictions on the use of property that are reasonable today may be so unreasonable under different conditions in the future as to amount to confiscation. Zoning officials, when properly authorized, have the authority to alter zone lines from time to time when there are substantial changes in conditions and such alteration has a reasonable relation to the public welfare. *Offutt v. Board of Zoning Appeals, supra,* 204 Md. 557.

This Court has also held that the action of the Board is entitled to a presumption of reasonableness and constitutional validity. *Kroen v. Board of Zoning Appeals, supra,* 209 Md. 426. This presumption, though less strong in instances of rezoning than in cases of original zoning, is a substantial one genuinely to be accorded by the courts.

It remains for us to apply the principles, as above stated, to the matters for our determination.

1

Did the evidence before the Board make the question of whether there had been a sufficient change in the neighborhood since the original zoning to warrant a reclassification fairly debatable? The land involved is situated in the Ninth Election District of Baltimore County to the west of Old Harford Road at Diehl Avenue. It is at the center of an area bounded by the major streets: Taylor Avenue to the south; Joppa Road to the north; Oakleigh Avenue to the west; and Old Harford Road to the east. On the west, the subject property is adjoined by a parcel of approximately 25

acres which, although originally zoned R. 6, or its equivalent under prior zoning regulations,[1] was reclassified for group housing in June 1951. To the north of the subject property, and separated from it by a parcel of approximately 5 acres owned by the Mayor and City Council of Baltimore of a width of approximately 500 feet, is another area comprising approximately 22 acres for which reclassification to permit group houses was granted in May, 1955. Group housing was in the course of construction on this parcel on August 22, 1957. To the immediate northwest of the last mentioned parcel there is still another parcel of approximately 33 acres which was reclassified for group housing in March, 1952. Said parcel has since been acquired as a future school site by Baltimore County. To the south of the subject property is vacant land and to the east a contractor's storage yard and repair shop. To the southeast, the land is devoted to cottage residential and commercial use.

Mr. Lemmon, a real estate appraiser, consultant and investor of long experience, pointed out that the Ninth Election District of Baltimore County in which the subject property lies has undergone marked urbanization since the original zoning in 1945. Large scale commercial, office, institutional and governmental development has since occurred. The Baltimore County Director of Planning testified that there has *obviously* been a great deal of change of *all* kinds since 1945. In 1945, the entire district was essentially rural. Of 12,721 building permits granted in that district since the original zoning, 3,917, or 30.7%, related to group housing. Within a one mile radius of the subject property, no less than seven parcels originally zoned for cottage development have been reclassified for group housing. It was testified that the great demand for houses in the area made group house con-

---

1. The Baltimore County Zoning Regulations existing when the case was tried combined the prior "A" (Cottage) and "B" (Semi-detached) Residential Zones described in *Oursler v. Board of Zoning Appeals,* 204 Md. 397, 400, 104 A. 2d 568, into "R. 6 Zone" and changed the name of the prior "D" Residence Zone (Group) to "R. G. Zone."

struction the most appropriate use to which the land could be put.

The appellees offered no testimony to show a lack of change of character in the neighborhood, but rely upon what they claim is a lack of such showing by the appellant.

It should be noted here that this case involves an application for reclassification from one residential sub-category to another; not the removal of the land from the use category in which it was placed when originally zoned, as was the situation in many of the cases presented to this Court. In this respect, the situation is, to a certain degree, different from the application to reclassify property zoned as residential to commercial or industrial. The change involved here is the difference between permitting the erection of approximately 7.5 houses per acre and/or about 6 houses per acre. There was testimony that a better and more economical dwelling-unit could be achieved by the group housing than by the cottage type home.

We think the evidence of the explosive alteration of the area in the locality involved, one in fairly close proximity to the boundaries of Baltimore City, clearly renders the question of change in the character of the neighborhood, at least, fairly debatable. The rapid urbanization since 1945, which brought industrial, commercial and governmental activities into the area, created additional employment and widespread need for moderately priced housing. One expert witness testified: "It seems to me that that cluster of changes, encircling the subject property, very closely, well, within a half mile radius * * * indicates a recognition starting back almost two years after the original zoning, of a recognition of changed conditions by the zoning authorities; the whole general and series of changes in classification." The above, together with the testimony that group housing of the nature contemplated would not depreciate property values of cottage type dwellings in the vicinity and the other evidence before the Board, rendered the question of change in character of the neighborhood, as stated above, at least reasonably debatable, and, therefore, one for the decision of the zoning authorities and not the courts.

## II

Would the impact on traffic conditions and the school system, as shown by the evidence before the Board, make the granting of the reclassification arbitrary, capricious and illegal, or was the evidence sufficient to render the question fairly debatable? Miller Avenue, a public street, upon completion will extend from the subject property eastward to Old Harford Road, intersecting Old Harford Road opposite Putty Hill Road, of which it will become an extension. Putty Hill Road runs southeasterly from Old Harford Road to intersect Harford Road. Both Old Harford Road and Harford Road are thoroughfares leading to and from Baltimore City. The construction of Miller Avenue was an imminent matter at the time of the hearings in this proceeding. Funds therefore had been budgeted by Baltimore County and bids were to be advertised within two or three weeks from August 22, 1957. It was estimated that construction would be completed by early spring, 1958. The testimony of independent experts, employees of the Baltimore County Departments of Public Works and Planning, was to the effect that Miller Avenue would adequately handle the traffic generated, not only by the instant property if it contained group houses, but also by the property to the north on which group houses were already in the course of construction at the time of the hearing. Appellees produced no expert testimony on traffic conditions in the neighborhood of the subject property, but several individual protestants, living at varying distances from the instant property, testified that in their opinion Old Harford Road was rather heavily traveled in rush hours. However, David H. Fisher, Chief of the Bureau of Engineering of the Baltimore County Department of Public Works, stated that, while he had not personally made any technical study of traffic conditions on Old Harford Road and Harford Road, from his experience in travelling those thoroughfares he was of the opinion that Harford and Old Harford Roads could handle adequately traffic coming from Miller Avenue developed by a 75 acre tract of group houses, with a density of 7.5 houses per acre. The only group house tracts which actually would so develop traffic are the subject property of 27 acres, and

the area to the north, on which building had commenced, of approximately 22 acres, a total of 49 acres. John E. Gavrelis, a Principal Planner in the County Department of Planning, on the basis of his acquaintanceship with Old Harford Road, stated some slight effect on Old Harford Road would be caused by Miller Avenue generated traffic.

The Administrative Assistant to the Superintendent of Public Schools of Baltimore County testified to the existence in the immediate neighborhood of the instant property of three elementary schools and a junior-senior high school. He also testified that, based on an assumption of 30 pupils per classroom, there were overloads of students of 334, 181 and 119 students at the elementary schools, respectively. On the basis of 25 pupils per classroom the overload was 829 at the junior-senior high school. He also testified that there was under construction in the area a new junior high school, and that it was not necessary at the time of the hearing to establish shifts at the schools in the area in order to accommodate the students enrolled in them. He further testified that overloading of the schools of Baltimore County was a general condition over all the county; and that, if the people who would live on the instant property if the reclassification were granted settled elsewhere schools would have to be provided.

This evidence made the question of reclassification, in so far as it related to traffic congestion and overcrowded schools, at least, fairly debatable, and rendered it for the experts comprising the Board to consider and determine. That Miller Avenue extended has not been actually constructed, Old Harford Road is "heavily" travelled in rush hours, and the schools are overcrowded were proper factors that should have been, and unquestionably were, considered by the Board; but, upon the evidence in this case, they do not make the Board's decision to reclassify the property arbitrary, capricious or illegal. Cf. *Price v. Cohen*, 213 Md. 457, 132 A. 2d 125. The order of the Board of Zoning Appeals should have been affirmed.

This case is easily distinguished from *Kroen v. Board of Zoning Appeals, supra,* 209 Md. 420, where this Court *upheld* a decision of the Board that a reclassification of the property

there involved from cottage and semi-detached use to a group housing use would be detrimental to the community. In the instant case, the Board has decided, upon evidence that is, at least, fairly debatable, that the reclassification *would not* be detrimental to the community.

By statute, section 532 (h), Code of Baltimore County (1955), we must require the appellant to pay the costs.

> *Order reversed, and case remanded for the passage of an order in accordance with this opinion, the appellant to pay the costs.*