REESE ᴇᴛ ᴀʟ. *v.* MANDEL ᴇᴛ ᴜx.

[No. 106, September Term, 1960.]

*Decided January 13, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Robert M. Thomas,* with whom were *Venable, Baetjer & Howard* on the brief, for appellants.

*Richard C. Murray,* with whom were *Michael Paul Smith, James F. Offutt, Jr.* and *Smith & Harrison* on the brief, for appellees.

PRESCOTT, J., delivered the opinion of the Court.

After the Zoning Commissioner of Baltimore County and the County Board of Appeals (Board) had denied a request for zoning reclassification, the Circuit Court reversed the action of the Board, and directed that the reclassification be granted. Nearby property owners, who had been granted leave to intervene below, have taken this appeal.

The appellees, the Mandels, are the owners of a 35-acre tract of land located about a mile and a half north of Towson in the Eighth Election District. It is bounded on the northeast by Pot Spring Road, on the east by Dulaney Valley Road, on the south by Seminary Avenue, and on the west and northwest by an irregular line that finally joins the northeasterly boundary on Pot Spring Road. All of the property was zoned R-40 in the new comprehensive zoning map of the Ninth Election District adopted in 1955,[1] with a small exception not here involved. Approximately 23 acres of the 35 acres are sought to be reclassified from R-40 to R-20 zoning in this proceeding.

The appellees made no attempt to show "a change in the neighborhood," nor that a failure to grant their request would deny them all reasonable use of the property, to support their petition, but relied on a claim that a mistake in regard to their property had been made when the new comprehensive map

---

1. R-40 zoning is residential, one-acre lots; R-20, residential, one-half acre lots. The subject property is located on the edge of the Eighth Election District, but was included in the Ninth Election District zoning map.

was adopted. The trial court sustained this contention and held there was "no substantial evidence to support the finding [that the appellees had failed to establish a mistake had been made in the comprehensive map] and order of the Board in denying the petition for reclassification * * * from R-40 to R-20." He therefore concluded the action of the Board was arbitrary, reversed its decision and order, and remanded the proceedings to the Board for an order in accordance with his memorandum opinion.

The testimony adduced was quite lengthy and the appellants have raised several questions, but, in the view that we take of the case, the testimony may properly be concisely summarized, and only one of the appellant's contentions need be considered at any length.

Julius Mandel stated his reasons for requesting the change in zoning were that there was a greater demand for half-acre lots than for acre lots, and the half-acre lots were more economical from the standpoint of both the owner and the developer. He frankly admitted that his property, if rezoned, would be surrounded on all sides, except one, by R-40 zoning, a fact clearly shown by a map of the proposed change.

Milton J. Dance, a real estate expert, testified concerning certain nearby R-20 subdivisions, and stated that, in his opinion, the granting of the reclassification would not have any depreciatory effect on adjoining properties, provided the improvements were in keeping with the general area.

A portion of the minutes of the Baltimore County Planning Board of December 19, 1957, was read into the record. It disclosed that the Planning Board, an advisory body, had, on November 6, 1957, appointed a committee of three of its members to study the petition for reclassification. The committee concluded that the proposal to reclassify the property was appropriate and logical. After discussion, the Planning Board, itself, agreed that an error had been made by the County Commissioners in the adoption of the Eighth and Ninth Districts zoning maps, subsequent to the approval of those maps by the Planning Board. This conclusion was based upon a statement that the zoning plans approved by the latter had established a broad band of R-20 zoning easterly of

the band of R-10 zoning alongside of Charmuth Road for transition to the R-40 zone adjacent to Dulaney Valley and Pot Spring Roads. The maps, as finally adopted by the Commissioners, shifted the R-10 zone line easterly, but failed to make corresponding adjustments to the eastern boundaries of the R-20 zone, resulting, in the opinion of the Planning Board, in an illogical boundary between the R-20 and R-40 zones.

Malcomb H. Dill, Director of Planning, stated that based upon the particular subdivision plan as presented it would be difficult to demonstrate that the R-40 properties in the vicinity would be depreciated in value, but said, "it is conceivable that this [subject] property could be developed in half-acre lots in such a way as definitely to affect the neighborhood unfavorably." He was in general accord with the conclusion reached by the Planning Board, which has been stated above.

Augustine J. Muller, who served as one of the County Commissioners and also as an *ex-officio* member of the Planning Board at the time of the adoption of the new comprehensive map in 1955, was called as an expert witness by the appellees, and testified that he agreed with the conclusion of the Planning Board, as stated in the minutes of its meeting of December 19th, and for the same reasons.

The protestants called quite a number of nearby property owners, among whom were a lawyer, a banker, and a registered architect, who had been a contractor and builder for some thirty years. All of these witnesses were in general agreement that there was no error in the R-40 zoning of the Mandel property when the comprehensive map was adopted, that the property could be properly and profitably developed in the R-40 classification, and that its reclassification to an R-20 zoning would depreciate the value and desirability of nearby properties, many of which, although zoned R-40, contained much larger areas for single residences than the one-acre requirement of that classification.

We shall elaborate, briefly, upon the testimony of three of these witnesses. J. Nicholas Shriver, Jr., was authorized to appear in behalf of the Board of Directors of the Carmelite Sisters of Baltimore, whose property, consisting of 27 acres,

is just across the road south of the subject property. Their property and the improvements, when completed, will represent an investment of some $300,000. The Carmelite Sisters of Baltimore, a corporation, is a cloistered order of nuns, and before purchasing the property, due to the fact that the nuns do not leave the property, a survey was made to find a location that would be close to a source of supply of necessaries, and, at the same time, afford the privacy desired. To use Mr. Shriver's words, the property was selected, "because it was in the center of an area with the highest zoning requirements that existed in Baltimore County, and which seemed to be such a well stabled area that it didn't appear that any zoning changes could be anticipated." [2]

Pietro Persico is the graduate architect, and contractor and builder of thirty years' experience. He is the owner of forty-two acres, across Pot Spring Road and directly to the north of the subject property, which he is developing on an R-40 basis, with homes in the $40,000 to $45,000 class. It was his opinion that the R-40 classifications of his property and that of the Mandels were proper, that he saw no reason why the Mandel property could not be developed on an R-40 basis, and that it was his opinion, from experience, that development of the Mandel property on an R-20 basis would have a tendency to depreciate value of his own R-40 property.

Charles F. Reese said that he had lived on the southeast corner of Seminary Avenue and Dulaney Valley Road for 18 years, in a home that was located on a rising slope (zoned R-40), which looked directly across to the Mandel property. He thought that the R-40 classification of the Mandel property on the zoning map was "certainly" an appropriate one, and he was of the very definite opinion that its proposed reclassification, if permitted, would be detrimental to the surrounding property in the area. He also testified that he was treasurer of the Dulaney Valley Protective Association, representing some one hundred and five families in the general

---

2. Although the western portion of this property is zoned R-20, it was so zoned in the comprehensive map, and the Carmelites have no present intention of doing anything other than keeping the property intact for their own use.

neighborhood, and the association had met and had voted unanimously to oppose the reclassification.

The appellants earnestly suggest that a basic and very significant piece of evidence, which supports their main contention in the case, is the zoning map, itself, and we agree. The Board of Appeals based its denial of the reclassification squarely upon the conclusion that the legislative body, the County Commissioners, had not made a mistake with reference to the subject property, when the comprehensive map was adopted. The map demonstrates that the property sought to be reclassified from R-40 to R-20 is completely surrounded on all sides by R-40 zoning, except for 500 feet in the extreme southwestern corner, which adjoins an R-20 zone to the west. Mr. Muller, one of the appellees' expert witnesses, admitted the subject property, if rezoned, would constitute "an irregular rectangular peninsula of R-20 jutting out into an otherwise R-40 zone."

The map also shows that the subject property is in the midst of a broad band of R-40 zoning running along the western side of Dulaney Valley Road to a depth of between 2000 to 3000 feet (except at the very southern end where it is reduced to approximately 800 feet) all the way from the northern edge of the map to a point just north of the Baltimore County Beltway on the south. Thus, R-40 extends approximately one-half mile to the south of the Mandel property and for a distance of at least one mile to the north (to the edge of this particular map), and possibly beyond that on the next adjacent map.

The eastern side of Dulaney Valley Road is similarly protected by the Loch Raven Reservoir watershed area on the northeast and by a broad band of R-40 property running from the southern boundary of the watershed area, just north of Seminary Avenue, at least to St. Francis Road on the south.

There can be little doubt that in Maryland it is no business of the courts to zone or rezone property. We have stated, and repeatedly restated, that this is a legislative function, and, in reviewing the action of the zoning authorities, it is the duty of the courts to decide only whether such action is arbitrary, whimsical, discriminatory, or illegal. *Kroen v. Bd. of Zoning*

*Appeals,* 209 Md. 420, 427, 121 A. 2d 181; *Montgomery Co. Council v. Scrimgeour,* 211 Md. 306, 127 A. 2d 528; *Missouri Realty, Inc. v. Ramer,* 216 Md. 442, 446, 140 A. 2d 655. These are only a few of the Maryland decisions to this effect.

In testing the action of the Board of Appeals herein, we start off with a strong presumption of the validity of the classifications made when the comprehensive map was adopted, and those who attack the classifications bear a heavy burden of overcoming the presumption of their validity—heavier in the case of comprehensive zoning than in the case of piecemeal reclassification. *Missouri Realty, Inc. v. Ramer, supra; Hewitt v. County Com'rs of Baltimore County,* 220 Md. 48, 151 A. 2d 144; *City of Baltimore v. N. A. A. C. P.,* 221 Md. 329, 157 A. 2d 433; and authorities cited in these cases.

The appellees, we think, failed to meet and overcome this burden. Even if we assume that there was some substantial evidence before the Board to the effect that an original mistake had been made, the remainder of the testimony clearly made that issue, at least, fairly debatable. Cf. *Renz v. Bonfield Holding Co.,* 223 Md. 34, 158 A. 2d 611. The statement of Mr. Muller that he thought an error had been made was not conclusive of that fact, even though he was a member of the legislative body that adopted the map. *Bd. of County Com'rs of Talbot County v. Troxell,* 214 Md. 135, 139, 132 A. 2d 845. Cf. *Mettee v. County Com'rs of Howard County,* 212 Md. 357, 366, 129 A. 2d 136. And neither were the minutes of the Planning Board (the same recommendation had been made to and considered by the County Commissioners), nor the opinion of Mr. Dill binding upon the Board of Appeals. This evidence was, of course, proper for the Board to weigh and consider, but, when it is considered with the protestants' evidence to the contrary, especially that of Mr. Persico, an architect and a contractor and builder with years of experience, and the comprehensive zoning map, itself, we cannot hold that the Board's conclusion that no error had been made on the map in regard to the subject property was not fairly debatable, and therefore arbitrary, capricious, discriminatory or illegal.

The Board may well have concluded that the map demonstrated that the rezoning of the Mandel property to R-20

would be totally incompatible with an otherwise consistent pattern of low density R-40 zoning for a substantial depth on either side of Dulaney Valley Road, both north and south of the subject property.[3] And it may have inferred that the map disclosed a basic plan of the legislative body that adopted it oriented around the two major traffic arteries converging on Towson from the north: York Road approaching from the northwest and passing through an industrial, commercial and densely populated residential area, and Dulaney Valley Road approaching from the northeast and passing through a low density residential area bordering on Loch Raven Reservoir. The Board may have decided that the pattern of the map indicated a basic plan on the part of the County Commissioners to preserve York Road as a high density area and Dulaney Valley Road as a low density area, and, although the land between the two areas was zoned to make the transition as reasonable as possible, the exact pattern of the intermediate transitional zoning was not a matter of the same high priority as the preservation of high density along York Road and low density along Dulaney Valley Road.

When the validity of the action taken by the Board is reasonably and fairly debatable, as we have stated was the case here, the courts have no authority to overturn that action by substituting their judgment for that of the Board. *Renz v. Bonfield Holding Co., supra,* and the many Maryland cases there cited.

There remains one minor contention that gives us little difficulty: it is the question as to who shall pay the costs. The Baltimore County Code (1958), Section 34-7 (Ch. 634, Acts of the General Assembly of 1953) provided that in the appeal of zoning cases "the Court of Appeals shall not award costs of the appeal against any party to the appeal except the appellant." Maryland Rule 882 a, effective as of January 1,

---

3. The appellees made the argument that the peninsula shaped projection of their R-20 property (if rezoned) into the R-40 zone could be corrected by the simple expedient of granting additional R-20 reclassification. It, apparently, was unpersuasive to the Board. Cf. Renz v. Bonfield Holding Co., supra, 223 Md. at page 41, 158 A. 2d 613.

1957, states: "In all cases in this Court [the Court of Appeals] the awarding of costs shall be in the discretion of this Court, but unless it is otherwise ordered by this Court costs shall be awarded against the losing party." We held in the *Renz* case, *supra,* 223 Md. 45-46, that as repeals by implication are not favored and local laws are not repealed by general laws unless such purpose is clearly indicated, the local law of Baltimore County, Section 34-7, prevailed, at that time, over Rule 882 a.

However, since the ruling in *Renz,* said Section 34-7 has been repealed by Bill No. 80, which was passed by the Baltimore County Council, and became effective July 25, 1960. The Bill has no saving clause in regard to the payment of costs in this type of appeal in zoning cases (compare Section 23-38 of the new law relating to appeals from decisions of the Planning Board), but, in this respect, it is completely silent.

The appeal herein was filed on May 21, 1960, prior to the repeal of Section 34-7 of the Baltimore County Code by Bill No. 80, mentioned above.

"Costs," generally, are allowances in the nature of incidental damages awarded by law to reimburse the prevailing party for expenses necessarily incurred in the assertion, or defence, of his rights in court; they are purely statutory, and at common law were unknown.[4] *Peyton v. William C. Peyton Corp.,* 8 A. 2d 89, 91 (Del. Ch.). Cf. *Weiner v. Swales,* 217 Md. 123, 125, 141 A. 2d 749; *Gray, Law of Costs,* p. 1.

It is almost universally held that the law in respect to costs existing at the time of the judgment that ends the controversy between the parties (in the absence of a saving clause or clear indication in the new statute or rule of court to the contrary) prevails over the law as it existed at the time when the action was commenced, and such holdings do not impinge upon the constitutional inhibition against impairing the obligation of contracts. 14 Am. Jur. *Costs,* ¶ 4; 20 C.J.S., *Costs,* ¶ 3 (b); *Shielcrawt v. Moffett,* 61 N. E. 2d 435 (N. Y.); *Hogan v.*

---

4. Costs were not given at common law, *eo nomine,* although, in reality, they were considered and included in the amount of damages, in such actions where damages were recoverable. 2 Poe, Pleading and Practice, ¶ 840, n. 5.

*Ingold,* 243 P. 2d 1 (Cal.); and for a long list of the authorities holding likewise, see the Annotation in 96 A.L.R. beginning at page 1429. And the same rule applies to costs on appellate review. 14 Am. Jur., *Costs,* ¶¶ 4, 91; Annotation 96 A.L.R. 1434-1435. We, therefore, hold that Rule 882 a is controlling in the instant case, and, accordingly, we shall award the costs in such manner as we deem meet and proper.

> *Order reversed, and cause remanded for the entry of an order sustaining the decision of the board of appeals, the appellees to pay the costs.*