ELLIOTT et ux. v. JOYCE

[No. 52, September Term, 1963.]

78

*Decided November 21, 1963.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*Robert J. Romadka,* with whom was *Leonard A. Vadala* on the brief, for the appellants.

*Robert A. Joyce, pro se* (no brief filed) for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is another zoning proceeding, which has pursued more or less of a "zigzag" course since its institution. Appellants, as the owners of a parcel of land in Baltimore County, applied to the Zoning Commissioner for a change of classification of said parcel from an R-6 Residential Zone to a B-L Commercial Zone and a special exception for a gasoline station, and said application was denied by the Commissioner. Petitioners appealed to the Board of Appeals, and that Board, in a two-to-one decision, reversed. Thereupon, the appellee here entered an appeal to the Circuit Court, and the trial judge reversed the decision of the Board. The appeal to this Court followed.

The question to be decided is whether the action taken by the Board was fairly debatable, or was it arbitrary and capricious in a legal sense, because it lacked substantial evidence to support it?

The appellants rely principally upon a "change of neighborhood" to support the action of the majority of the Board. The appellee filed no brief, and, from the record extract and the ex-

hibits contained therein, it is difficult to state, with accuracy, the exact zoning of some of the surrounding and neighboring properties.

It seems that the subject property (103 by 155 feet) is surrounded, or almost surrounded, by residentially zoned properties. It is located on the southeast corner of the intersection of Dogwood Road and Clarke Avenue, and is improved by a small dwelling. Dogwood Road, running generally in an east-west direction, is a rather narrow two-lane highway, without sidewalks. Immediately to the east of the subject property and within some seven feet from its boundary line is the residence of one of the protestants. Apparently, the property further to the east along Dogwood is residential for some 2,000 feet, and then some commercial uses begin. Diagonally across Dogwood, there is a small nursery school and a small apartment house containing three apartments, but the property immediately north of the subject property and across Dogwood is residential. The contiguous property to the south is residential for about 150 feet, where it joins the Security Senior High School site. The bulk of this site is in a southeasterly direction from appellants' property. Its area is substantial (estimated to be some thirty acres), and it extends southeasterly on Clarke Avenue (described below) to a distance of some 1,800 to 1,900 feet from the intersection. Further to the southeast, some 2,500 feet from the subject property, and across Security Boulevard, 120 feet wide, is the Meadows Industrial Park, on which is located the Social Security site.

We return to the intersection of Dogwood and Clarke. Clarke Avenue is a fairly new street, and when it was constructed, appellants sold the county three to five feet of their land for its construction. It intersects Dogwood at a 90-degree angle. At the intersection, Clarke runs in a generally north-south direction, but, at a point about 500 feet south thereof, it curves in a southeasterly direction so that some of the property directly south of appellants' is across Clarke Avenue from it. Shortly to the south of the subject property runs a fair-sized stream called Dead Run. Further south at a point some 600 feet from the intersection and across Clarke Avenue is a gasoline filling station. Still further south, some 1,500 feet from the

intersection, is the proposed site of a shopping center. The property immediately to the west and across Clarke Avenue is zoned residential, but, beginning about 1,400 feet west of the intersection, there are some commercial uses.

Appellants made an attempt to show a "need" in the community for the filling station, but no great weight can be afforded this testimony, for the evidence discloses at least four such stations within a radius of about one-half of a mile.

We have set forth, on innumerable occasions, the function of the Court of Appeals when determining questions of reclassifications in zoning. The Court will not zone nor rezone, nor will it substitute its own judgment as to the wisdom or soundness of the action taken by the Board, if supported by substantial evidence. In other words, if there be room for reasonable debate as to whether the facts warranted the Board in deciding the need for its action, the decision must be upheld. For one of the many cases stating the rule, see *Missouri Realty v. Ramer,* 216 Md. 442, 140 A. 2d 655. Judge Marbury, for the Court, in *City of Baltimore v. Sapero,* 230 Md. 291, 186 A. 2d 884 stated the substantial evidence test to be: "[It] means whether on the record the agency could reasonably make the finding. This is the extent of the reviewing court's inquiry."

The trial judge stated:

"In my opinion, there is no evidence whatever which would support the Board's action in granting this reclassification. The changes which were testified to in the record were changes which either took place long before the Board's action, and, incidentally, the adoption of the land use map for the area,[1] or were so far removed from the subject property as not to have any effect upon the subject property."

We agree that the record before us fails to meet the requirements of the "substantial evidence" test.

There is no suggestion or claim that the failure to grant the reclassification with the special exception would deny the property owners of all reasonable use thereof in a constitutional

---

1. It appears that this was done in November of 1962.

sense. As a matter of fact, it is presently improved by a dwelling, used by the appellants as their residence. They claim, however, that the increased traffic and new lights on Clarke Avenue render their dwelling less desirable as a habitation, but, as pointed out by Mr. Steinbock in the minority opinion of the Board, "residents in other sections of the County live on thoroughfares with similar lights and it is possible to shade such lights in a manner so as to prevent glare into residences."

Reclassification in zoning as well as original zoning must bear some reasonable relationship to the general public interest in promoting the health, safety or welfare of the community. Code (1957), Article 66B § 21; *Missouri Realty v. Ramer, supra; Furnace Branch Land Company v. Board of City Comm.*, 232 Md. 536, 194 A. 2d 640. Mr. Gavrelis, Deputy Director of Planning for the county, who was called by the petitioners, stated that the office of Planning and Zoning is not in favor of the petition for reclassification and special exception because: it is not appropriate due to the surroundings; commercial changes in the area have been confined to the Security Boulevard (a street some 1,800 to 2,000 feet south of the subject property); Dogwood Road frontage has not been changed; and it would be out of character with the residential surroundings (this last reason seems to be included in the first). The record as it has been presented to us, we think, clearly supports these conclusions. In addition to the facts which we set forth above, there was testimony that two schools are located in the neighborhood of the intersection of Dogwood Road and Clarke Avenue, and there is a school bus stop at the intersection. These factors contribute to producing a heavy pedestrian traffic, and, since Dogwood has no sidewalks and accommodates but two lanes of traffic, Mr. Steinbock was of the opinion that the "turn in movements to and from the proposed service station * * * would tie up traffic in both directions [on Dogwood] and create hazards, which are not presently existing at this point."

We hold that "on the record" before us, the Board could not "reasonably make" the reclassification and grant the special exception. Therefore, its action in so doing was arbitrary and capricious in a legal sense. To permit a gasoline station in the residential surroundings of the subject property would not pro-

82

mote the safety, health or general welfare of the community, but would constitute, we think, invalid "spot zoning." *Baylis v. City of Baltimore,* 219 Md. 164, 148 A. 2d 429; *Hewitt v. County Comm'rs,* 220 Md. 48, 151 A. 2d 144.

*Order affirmed, with costs.*