467 A.2d 504

**ANTHONY PLUMBING OF MARYLAND, INC. et al.**

v.

**ATTORNEY GENERAL OF MARYLAND et al.**

**No. 158, Sept. Term, 1982.**

Court of Appeals of Maryland.

Nov. 30, 1983.

12

Paul Mark Sandler, Baltimore (Raymond Daniel Burke and Freishtat, Schwartz & Sandler, Baltimore, on brief), for appellants.

William Leibovici, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellees.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

ELDRIDGE, Judge.

The appellants in this case have raised several questions regarding the enforcement scheme of the Maryland Consumer Protection Act, Maryland Code (1975, 1983 Repl.Vol.), §§ 13–101 to 13–501 of the Commercial Law Article. But, because the order appealed from is not a final order and is not an appealable interlocutory order under Code (1974, 1980 Repl.Vol.), § 12–303 of the Courts and Judicial Proceedings Article, we cannot at this time reach the questions presented.

On May 25, 1979, the Attorney General of Maryland and the Maryland State Board of Commissioners of Practical Plumbing (jointly referred to as the "State") filed suit in the Circuit Court of Baltimore City against Anthony Plumbing of Maryland, Inc., Anthony Plumbing of D.C., Inc., Irving Klein, Ray Klein, Alan Bachman, Donald Cheek and Paul Damoc (jointly referred to as "Anthony Plumbing"). The State's amended bill of complaint alleged that Anthony Plumbing had violated the Maryland Consumer Protection Act by engaging in a variety of unfair or deceptive trade practices. The alleged unlawful practices included selling unnecessary plumbing work and obtaining waivers of consumers' rights to cancel their repair and improvements contracts in violation of the Maryland Door-to-Door Sales Act.[1] The State prayed for civil penalties, costs of the action and restitution, as well as injunctive and other relief.

After hearing extensive trial testimony over a three-month period, the trial judge concluded that the evidence clearly and convincingly proved that Anthony Plumbing had devised, promoted, and engaged in unlawful, fraudulent, unfair and deceptive trade practices. Accordingly, the court enjoined Anthony Plumbing from engaging in these unlawful practices, awarded restitution to those consumers who had presented evidence at trial, assessed civil penalties, awarded to the State the costs of the action, and appointed a Master to hear testimony from other consumers allegedly victimized by Anthony Plumbing's illegal activities. Anthony Plumbing took an appeal to the Court of Special Appeals, and, before any further proceedings in that court, we granted the State's petition for a writ of certiorari.

Anthony Plumbing's appeal does not encompass those parts of the trial court's order imposing injunctive relief and awarding restitution. In fact, at oral argument, counsel for

---

1. A violation of any provision of the Maryland Door-to-Door Sales Act, Code (1975, 1983 Repl.Vol.), §§ 14–301 to 14–306 of the Commercial Law Article, constitutes an unfair or deceptive trade practice under § 13–301(13)(iv) of the Maryland Consumer Protection Act.

Anthony Plumbing expressly reaffirmed the limited scope of the appeal. Anthony Plumbing is here challenging only the portions of the order appointing a Master and assessing civil penalties and costs. As to these parts of the order, Anthony Plumbing raises five issues for consideration. First, it contends that the appointment of a Master to conduct additional evidentiary proceedings was barred by res judicata or was otherwise improper. Second, Anthony Plumbing alleges that the trial court erred in assessing the maximum civil penalty against each individual defendant for each violation of the Consumer Protection Act; the proper method for computing civil penalties, according to Anthony Plumbing, is to assess one penalty against the defendants collectively for each violation of the Act. Third, Anthony Plumbing insists that the evidence did not support the trial court's findings that one thousand consumers were induced to purchase replacements where only repairs were necessary and that one thousand consumers were unlawfully coerced to waive their rights of contract rescission. Fourth, Anthony Plumbing asserts that the trial court erred in including in its award of costs of the action the expenses of the State's investigation and preparation. Finally, it argues that the Maryland Consumer Protection Act is unconstitutional because it allegedly does not contain adequate standards to prevent arbitrary enforcement of the Act.

The issue of whether the order was appealable was raised *sua sponte* by this Court at oral argument. Anthony Plumbing contended that the order determined the rights of the parties and thus was a final judgment, appealable under § 12–301 of the Courts and Judicial Proceedings Article. The State conceded that the order may not be final but asserted that § 12–303(c)(5), insofar as it provides for appeals from interlocutory orders for the payment of money, gave this Court jurisdiction over the appeal. We do not agree with either contention.

I

Of course, the right of appeal ordinarily lies from a final judgment only. Moreover, as we have reiterated many

times, appellate jurisdiction cannot be conferred on a reviewing court by consent of the litigants, and this Court will dismiss an appeal *sua sponte* when it recognizes that appellate jurisdiction is lacking. *Highfield Water Co. v. Wash. Co. San.,* 295 Md. 410, 414, 456 A.2d 371 (1983); *King v. State Roads Comm'n,* 294 Md. 236, 241, 449 A.2d 390 (1982); *East v. Gilchrist,* 293 Md. 453, 458, 445 A.2d 343 (1982); *Biro v. Schombert,* 285 Md. 290, 293, 402 A.2d 71 (1979).

The thrust of Anthony Plumbing's argument is that a final order has been rendered and that the proceedings before a special master will constitute a completely new trial. Anthony Plumbing's characterization of this case is wholly unsound.

▮ A trial court generally will refer certain issues raised in a case to a special master in order to conserve the court's time and resources. A master's duty is to engage in specific fact finding and make appropriate recommendations to the trial court. *Bris Realty v. Phoenix,* 238 Md. 84, 89, 208 A.2d 68 (1965). The master's findings do not finally dispose of the litigation in the trial court; they may be excepted to by the parties and are not binding until confirmed and implemented by the trial court. *Matter of Anderson,* 272 Md. 85, 101–104, 321 A.2d 516 (1974), *appeal dismissed,* 419 U.S. 809, 95 S.Ct. 21, 42 L.Ed.2d 35 (1974), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2399, 44 L.Ed.2d 667 (1975). *See, In Re: Mark R.,* 294 Md. 244, 252–253, 449 A.2d 393 (1982), and *Wenger v. Wenger,* 42 Md.App. 596, 602–604, 402 A.2d 94 (1979), *cert. granted,* 286 Md. 755 (1979), *appeal dismissed per stipulation,* January 2, 1980. The trial court, therefore, necessarily retains jurisdiction over the entire case while specified matters are before the master.

▮ Accordingly, this Court has held that an order, which refers matters to a master, is not a final order for purposes of appeal. *Waters v. Smith,* 277 Md. 189, 194–195, 352 A.2d 793 (1976). *See also, Hohensee v. Minear,* 253 Md. 5, 6, 251 A.2d 588 (1969); *Johnson v. Hoover,* 75 Md. 486, 490, 23 A. 903 (1892); *Wilhelm v. Caylor,* 32 Md. 151, 161 (1870);

*Hatton v. Weems,* 10 G & J 377 (1839); *Snowden v. Dorsey,* 6 H & J 114 (1823).

## II

Having determined that the trial court's order is not final for purposes of appeal, we now turn to the State's contention that the order is appealable under § 12–303(c)(5) of the Courts and Judicial Proceedings Article, which authorizes an appeal from an interlocutory order "for the . . . payment of money . . . unless the . . . payment is directed to be made to a receiver appointed by the court." [2] In this case there are

---

**2.** Despite the general rule that appeals lie from final judgments only, certain non-final orders are immediately appealable pursuant to § 12–303 of the Courts and Judicial Proceedings Article. That section reads as follows:

"§ 12–303. Appeals from certain interlocutory orders.

A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:

(a) An order entered with regard to the possession of property with which the action is concerned or with reference to the receipt or charging of the income, interest, or dividends therefrom, or the refusal to modify, dissolve, or discharge such an order.

(b) An order granting or denying a motion to quash a writ of attachment.

(c) An order:

(1) Granting or dissolving an injunction, but if the appeal is from an order granting an injunction, only if the appellant has first filed his answer in the cause.

(2) Refusing to dissolve an injunction, but only if the appellant has first filed his answer in the cause.

(3) Refusing to grant an injunction; and the right of appeal is not prejudiced by the filing of an answer to the bill of complaint or petition for an injunction on behalf of any opposing party, nor by the taking of depositions in reference to the allegations of the bill of complaint to be read on the hearing of the application for an injunction.

(4) Appointing a receiver but only if the appellant has first filed his answer in the cause.

(5) For the sale, conveyance, or delivery of real or personal property or the payment of money, or the refusal to rescind or discharge such an order, unless the delivery or payment is directed to be made to a receiver appointed by the court.

(6) Determining a question of right between the parties and directing an account to be stated on the principle of such determination.

four portions of the trial court's order concerning monetary relief. Specifically, the court assessed civil penalties, awarded costs, ordered money to be deposited with the clerk of the court to be held in escrow for costs associated with the master proceedings, and ordered the payment of restitution to those consumers who testified at trial. As previously mentioned, the payment of restitution is beyond the scope of Anthony Plumbing's appeal. Consequently, we are concerned only with the applicability of § 12–303(c)(5) to the assessments of civil penalties, the award of costs related to the action, and the requirement that money be deposited with the clerk of the court.

## A.

In ascertaining the scope of the phrase "order for . . . the payment of money" set forth in § 12–303(c)(5), it is appropriate to review the history of that statutory provision.[3]

In Maryland prior to 1718, an appeal was permitted only from a final judgment of a court of law. A parallel right to

---

(7) Requiring bond from a person to whom the distribution or delivery of property is directed, or withholding distribution or delivery and ordering the retention or accumulation of property by the fiduciary or its transfer to a trustee or receiver, or deferring the passage of the court's decree in an action under Maryland Rule V79.

(8) Deciding any question in an insolvency proceeding brought under Article 47 of the Code.

(9) Granting a petition to stay arbitration pursuant to § 3–208 of this article.

(10) Depriving a parent, grandparent, or natural guardian of the care and custody of his child, or changing the terms of such an order."

It should be noted that § 12–303(c)(1) expressly provides for an immediate appeal from an interlocutory order granting an injunction. But, because Anthony Plumbing has not appealed from the injunctive relief, § 12–303(c)(1) furnishes no basis for the present appeal.

**3.** For an excellent survey of the history of interlocutory appeals in Maryland, and § 12–303(c)(5) in particular, *see* Judge Wilner's opinion for the Court of Special Appeals in *Della Ratta v. Dixon,* 47 Md.App. 270, 277–284, 422 A.2d 409 (1980). In addition, much of the early background on the subject was reviewed by Chancellor Bland in Ringgold's Case, 1 Bland 5 (1824).

appeal from an equity decree was not then recognized. By Ch. 10 of the Acts of 1718, Maryland's Provincial Assembly expressly provided for the right of appeal from an equity decree. During the next 100 years subsequent statutes reaffirmed the general right to appeal a decree of a court of equity.[4] Neither the Acts of 1718 nor its successors, however, made clear whether an appeal was available only from a final decree or also from an interlocutory order in equity. It was not until 1841 that the Maryland General Assembly definitively resolved the issue. By Ch. 11 of the Acts of 1841, an appeal in equity was authorized from certain interlocutory orders, including an order for "the payment of money." At this time, appeals from courts of law were still restricted to final judgments only.

In 1962 an appeal was first authorized from an interlocutory order of a court of law. Even then, appeals were permitted only from interlocutory orders "with regard to the possession of property with which the action is concerned or with reference to the receipt of or charging of income, interest or dividends therefrom or the refusal to modify, dissolve, or discharge such an order." (Ch. 36, § 5, of the Acts of 1962.) Appeals at law could not be taken from interlocutory orders concerning the payment of money.

The present statute, § 12–303, enacted in 1973 as part of the general recodification of the statutes relating to the judiciary, combined into one section the existing code provisions regarding interlocutory appeals. The 1973 revision was the first time that reference was made to interlocutory orders of a "circuit court" rather than to orders of a "court of equity." According to the Revisor's Note,[5] this change

---

4. Those statutes include Ch. 20 of the Acts of 1720, Ch. 14 of the Acts of 1721, Ch. 72 of the Acts of 1785, and Ch. 193 of the Acts of 1818.

5. The Revisor's Note can be found in Ch. 2, § 1, of the Acts of 1st Sp. Sess., 1973, and in the 1974 Volume of the Courts and Judicial Proceedings Article. The Note does not appear in the 1980 Replacement Volume of that Article.

was a recognition that certain types of traditional equity orders, such as an injunction, could also be obtained from a court of law. As the Note makes clear, the 1973 revision was not intended to make any substantive alterations in the kinds of interlocutory orders that were appealable prior to a final judgment.

The history of § 12–303 thus indicates a legislative intent to allow interlocutory appeals only from those orders for the "payment of money" which had traditionally been rendered in equity. This is confirmed by judicial decisions. The types of orders previously held by this Court to be orders for the "payment of money" are orders for alimony, child support, and related counsel fees, *Chappell v. Chappell,* 86 Md. 532, 39 A. 984 (1898), and *Pappas v. Pappas,* 287 Md. 455, 413 A.2d 549 (1980). The Court of Special Appeals has recognized the appealability of similar interlocutory orders in domestic relations litigation, *Hofmann v. Hofmann,* 50 Md.App. 240, 437 A.2d 247 (1981), and *Della Ratta v. Dixon,* 47 Md.App. 270, 284, 422 A.2d 409 (1980), as well as an interlocutory order directing an assignee for the benefit of creditors to pay certain sums to creditors, *Genn v. CIT Corp.,* 40 Md.App. 516, 392 A.2d 1135 (1978).

The common thread in the above-cited cases is that each involves an order for a specific sum of money which "proceeds directly to the person" and for which that individual is "directly and personally answerable *to the court* in the event of noncompliance." *Della Ratta v. Dixon, supra,* 47 Md.App. at 285, 422 A.2d 409 (emphasis in original). These characteristics of a traditional equity order for the payment of money differ markedly from those of a typical judgment at law for the payment of money. The latter type of judgment "may settle the respective rights of the parties . . . but it does not purport to order anyone to do anything." *Ibid.* It is "not immediately enforceable," *id.* at 286, 422 A.2d 409.

■ Therefore, we conclude that an "order for the . . . payment of money" within the meaning of § 12–303(c)(5) is an order which is equitable in nature.

## B.

An order which assesses civil penalties is not in the nature of an equitable decree. Rather, as both the courts and Legislature of this State have indicated, an order for civil penalties creates a debt recoverable by an action at law.

Thus, in *Ordway v. Cent. Nat. Bank,* 47 Md. 217 (1877), involving an action to recover civil penalties under the National Banking Act, the Court described the action as the common law action of debt. Chief Judge Alvey stated for the Court:

> "The action of debt is an ordinary common law remedy; and it lies in the Courts of this State, having general common law jurisdiction . . . on statutes at the suit of the party grieved, either where it is expressly given to such party, as by the statute under consideration, or where a statute prohibits the doing an act under a penalty or forfeiture to be paid to the party grieved, and there is no specific mode of recovery prescribed. This is the well established doctrine in England; 1 Chitty Pl. 112, and authorities there cited; and it is the law here." 47 Md. at 242.

Earlier, in *Day v. State,* 7 Gill 321 (1848), the Court pointed out that the Legislature had provided a civil penalty for each offense under the state lottery laws, to be collected by the State in an action in debt (Ch. 109 of the Acts of 1846). In recognizing that an action in debt was the proper action for recovery, this Court said:

> "although the object of their institution, is the recovery of fines or penalties, yet in contemplation of law, they are as much regarded as civil actions, as if instead of actions in debt, they had been actions for money, had and received." 7 Gill at 326.

Moreover, as Poe has stated:

> "When debt will lie.—Upon analyzing the classes of cases in which debt will lie, it will be found to embrace a larger

number than either assumpsit or covenant. From a very early date it was the appropriate action to recover a penalty prescribed by Act of Parliament, at the suit either of the party grieved or of a common informer, in all cases where no particular action was named; and so it lies with us in all cases to recover fines and penalties imposed by statute, either when the statute names it, or names no action whereby the sum given, or penalty or forfeiture prescribed, may be sued for. It lies also to recover the sum due upon judgments or decrees, whether domestic (that is of Courts of other States, Districts or Territories of the Union) or foreign, for the *payment of money.*" (Emphasis in original.)

Poe, 1 Pleading & Practice § 138 (Tiffany's ed. 1925). *See also* J. Gorter & M. Fisher, *Essentials of Maryland Pleading* 18–19 (2d. ed. 1922) and Restatement of Judgments § 47 (1942).

Furthermore, the treatment given to civil penalties in Maryland parallels the view taken by the United States Supreme Court in *United States v. Ward,* 448 U.S. 242, 254, 100 S.Ct. 2636, 2644, 65 L.Ed.2d 742 (1980). There, the Supreme Court declared that the civil penalties provided in the Federal Water Pollution Control Act are "analogous to traditional civil damages." *See also, Hepner v. United States,* 213 U.S. 103, 29 S.Ct. 474, 53 L.Ed. 720 (1909), and cases cited therein, and *Stockwell v. United States,* 13 Wall. 531, 541–543, 20 L.Ed. 491 (1871).

██ The award of the costs of an action is also not considered to be equitable in nature, and thus not appealable under § 12–303(c)(5). In 1828, Chancellor Bland stated that costs taxed against a party to litigation are "equivalent to a liquidated decreed debt." *Colegate D. Ownings' Case,* 1 Bland 370, 409, 17 Am.Dec. 311 (1828). *See generally,* E. Miller, Equity Procedure § 278 (1897). More than a century later, in *Reese v. Mandel,* 224 Md. 121, 130, 167 A.2d 111

(1961), this Court suggested that the costs of an action are analogous to damages at law. In determining the proper award of costs in an action challenging a zoning decision by the Baltimore County authorities, this Court stated (224 Md. at 130, 167 A.2d 111):

" 'Costs,' generally, are allowances in the nature of incidental damages awarded by law to reimburse the prevailing party for expenses necessarily incurred in the assertion, or defense, of his rights in court; they are purely statutory, and at common law were unknown."

 Finally, the portion of the trial court's order, directing that Anthony Plumbing pay into court a sum of money to cover the cost of the proceedings before the master, will not support an appeal at this time. Once the proceedings before the master are concluded and the costs known, the money paid into court will be allocated accordingly. The direction to pay the money into court is essentially an award of part of the costs of the action, and should be treated like the other portion of the trial court's order awarding costs. In addition, this Court has specifically held that an order of an equity court, directing that money be paid into court pending further disposition, is neither appealable as an interlocutory order "for the payment of money" within the meaning of what is now § 12–303(c)(5) nor appealable as a final order. *Dillon v. Conn. Mutual Life Ins. Co.,* 44 Md. 386, 394–396 (1876). *See also, Burroughs v. Gaither,* 66 Md. 171, 192, 7 A. 243 (1886).

Consequently, the order for the payment of civil penalties, costs of the action and costs of the master proceedings is not the type of interlocutory order appealable under § 12–303(c)(5) of the Courts and Judicial Proceedings Article.

APPEAL DISMISSED. APPELLANTS TO PAY COSTS.